166 So. 72

STATE ex rel. PORTERIE, Atty. Gen., et al. v. SMITH et al.

No. 33609.

Dec. 2, 1935.

Rehearing Denied Jan. 6, 1936.

Gaston L. Porterie, Atty. Gen., Geo. M. Wallace, First Asst. Atty. Gen., and F. A. Blanche, of Baton Rouge, for appellants.

J. Oliver Bouanchaud, Paul G. Borron, and Benjamin B. Taylor, all of Baton Rouge, for appellees.

LAND, Justice.

This case is the same case as State ex rel. Porterie, Attorney General, et al. v. Smith et al., 182 La. 662, 162 So. 413, 415, in which the issues are fully stated.

However, for the sake of clarity, it is necessary to repeat here the following statements as to the case contained in our former opinion:

"Relators, the Governor and the Attorney General of the state of Louisiana, the police jury of the parish of East Baton Rouge, and thirteen persons who allege that they are members of the police jury of the parish of East Baton Rouge, under appointments by the Governor of this state, in accordance with the provisions of Act 22 of the Third Extraordinary Session of the Legislature of the state of Louisiana of 1934, obtained a temporary restraining order from the district judge, enjoining nine other members of the police jury of the parish of East Baton Rouge, the sheriff of that parish, and his deputies, the district and assistant district attorneys of the Nineteenth Judicial District, the legal advisors of the police jury, and the treasurer clerk of that body, who is said to have been appointed to that office by nine defendant members, or a minority, of the police jury, from interfering with the lawful and orderly functioning of the police jury and the alleged majority members thereof.

"On the rule nisi, the district judge, in a written opinion, refused to grant a writ of preliminary injunction to the relators on the ground that their joint petition failed to allege a right or cause of action, and recalled the rule nisi and the temporary restraining order.

"Relators then applied to this court for writs of certiorari, prohibition, and mandamus. We granted the writ of certiorari and made it returnable on April 15, 1935, and ordered the respondents, at the same time, to show cause why the writs of prohibition and mandamus and the relief sought by relators should not be granted.

"In response to the rule, the trial judge filed a written return and the record in the case, and respondents also made a joint written return."

After stating and disposing of the various issues involved, it is declared in the opinion that "The only legal way that the alleged majority members of the police jury consisting of the four elected members and the thirteen new members, can be prevented from conducting the affairs of the parish is by the court declaring the act of 1934 unconstitutional. The defendants, by banding together, have no right, by the practices that they have resorted to out of court, to prevent the statute from being executed."

The rule nisi was made absolute, in so far as the writs of certiorari and mandamus were concerned, and the Honorable W. Carruth Jones, judge of the Nineteenth judicial district court, was ordered and directed to issue a preliminary injunction in favor of plaintiffs and against defendants, and the case was remanded for further proceedings.

In obedience to the mandate of this court, the district court issued its preliminary writ of injunction.

The constitutionality of Act 22 of the Third Extraordinary Session of 1934 was then attacked in the original and supplemental answers of defendants, and in the petition of interveners, on the grounds that it violates the following sections of the State Constitution: Section 14 of article 5; section 24 of article 3; section 3 of article 14; section 5 of article 4; section 6 of article 4; and also on the grounds that it contravenes article 2 of the State Constitution, and section 4 of article 4 of the Federal Constitution.

The case was tried on its merits, and the act was declared unconstitutional solely on the grounds that it was enacted in violation of section 14 of article 5, and section 3 of article 14 of the State Constitution; and, as to the remaining grounds on which the act has been assailed, the trial judge declared in his written opinion that they were "without merit and require no further discussion in this opinion."

Accordingly, judgment was rendered, dissolving the preliminary injunction ordered by this court to be issued herein, and ordering the issuance of a final or permanent injunction against plaintiffs, as prayed for by defendants and interveners.

From this judgment, plaintiffs have appealed.

(1) As seen from the stipulation of counsel filed in the record at page 114, the sole remaining issue in this case to be decided is the constitutionality vel non of Act 22 of the Third Extraordinary Session of 1934.

The trial judge, the Honorable W. Carruth Jones, sustained only two of the grounds of attack upon the constitutionality of the act, viz.:

1. That the act violated section 14 of article 5 of the Constitution in that the object and subject-matter of the act were not embraced in the Governor's call for the special session; and

2. That the act violated section 3 of Article 14 of the Constitution, directing the Legislature to provide optional plans for the organization of parochial government.

Section 14 of article 5 of the Constitution provides, with reference to Extraordinary Sessions, that: "The power to legislate, under the penalty of nullity, shall be limited to the objects specially enumerated in the proclamation of the Governor, * * * convening such extraordinary session, and the session shall be limited to the time named therein, which shall never exceed thirty days."

Defendants and interveners aver "that the object and subject-matter contained in said Act No. 22 was not specially enumerated in the proclamation or call of the Governor of the Third Extraordinary Session of 1934, or in any supplemental proclamation or call relating thereto. * * *"

House Journal, page 4, and Senate Journal, page 4, of the Third Extraordinary Session of the Legislature of 1934, contain the proclamation of the Gover-

nor convening that session, and the proclamation shows that the Legislature was convened "for the consideration of and action upon the following specially enumerated *objects*, to-wit, * * * 16. Appointment and election of public officers."

■ Section 14 of article 5 of the Constitution does not require that the object of the act, as if stated in its title, or that the subject-matter of the act, as if enacted, shall be stated in detail in the call, but merely requires that "the objects" or subjects to be legislated upon shall be designated therein, and such "objects" or subjects may be general.

The rule is thus stated in 59 C.J. at page 527: "The Governor's call or message need not state *the details* of the legislation to be considered, as such matters *are within the discretion of the Legislature* and beyond the control of the Governor except for his power of veto. Where *a general object* is described, the Legislature is free to determine *in what manner* such object shall be carried into effect." (Italics ours.)

A general object, "appointment and election of public officers," is stated in the call in this case. As a police juror is a "public officer," such officer necessarily comes within the purview of the general object designated in the call.

■ That a police juror is a "public officer" and a "state officer" is well settled by the jurisprudence of this court, by the provisions of the State Constitution, and by various statutes passed by the

Legislature, and its members are presumed to know that fact.

A police juror is a "public officer." State v. Bain, 137 La. 308, 68 So. 621.

Revised Statutes, § 2608, providing that all officers, whether appointed or elected, shall hold their offices and discharge the duties thereof until their successors are elected or appointed and duly qualified, was held to apply to police jurors. State ex rel. Daniel B. Gorham v. F. F. Montgomery, 25 La.Ann. 138.

The case of Thomas v. Fuller, 166 La. 847, 118 So. 42, involved Revised Statutes, §§ 2593–2605, relating to "public officers," and the district attorney in that case was compelled by mandamus to bring an intrusion into office suit against a member of the police jury.

In State ex rel. Porterie, Atty. Gen., et al. v. Jones, District Judge, et al., 181 La. 390, at page 399, 159 So. 594, 597, it is said: "A state officer is one created by the Legislature or established by the Constitution. A deputy sheriff is a state officer created by the Legislature, as his appointment is provided for by section 3542 of the Revised Statutes and article 764 of the Code of Practice, and the 'Legislature may provide the mode of filling all offices created by it.' Const. 1921, art. 5, § 11; State v. Titus, 152 La. 1011, 95 So. 106; State v. Taylor, 44 La.Ann. 783, 11 So. 132; State v. Rogers, 138 La. 867, 70 So. 863."

The office of police juror is also created by the Legislature, and the Legislature may

likewise provide the mode of filling it, under the specific and direct authority granted to the Legislature by article 5, § 11, of the present Constitution.

A police juror, therefore, is not only a "public officer," but he is a "state officer."

Besides, the term "public officers" includes all public officers, state, district, parochial, ward, or municipal. See article 9, § 6, Const. 1921, providing for removal of officers.

All officers must take the oath before entering upon the discharge of their duties. Article 19, § 1, Const. 1921.

All officers are commissioned by the Governor by the authority of the state. Article 5, § 21, Const. 1921.

■ The rule that the Legislature cannot legislate on a matter not designated in the Governor's proclamation does not require as comprehensive and as clear an expression of the subject of the legislation as is required in the title of an act. 59 C.J. 528.

■ Besides, "Where a general object is described, the Legislature is free to determine in what manner such object shall be carried into effect." 59 C.J. 527.

This is not a case where the Legislature has legislated upon a matter not designated at all in the Governor's message or call.

Police jurors, being "public officers," were necessarily included in the general object of the call; and the fact that police jurors are "public officers" was well known to the Legislature.

■ The argument that the call was not a general one is refuted by the very language itself of the call: "Appointment and election of public officers." As the greater includes the lesser, the call was broad enough to embrace police jurors within it, and to justify the provisions of Act 22 of the Third Extraordinary Session of 1934.

This attack upon the constitutionality of the act is without merit.

■ It is also argued by counsel for defendants and interveners that the terms in the Governor's call, "appointment and election of public officers," do not include *the creation* of officers.

No *new* offices are created by the act, but simply incumbents of offices already existing are provided for.

The office of "police juror" has been upon the statute books of this state for a hundred years. The act merely provides for the appointment and election of "additional police jurors." Neither the character of the office, nor the duties to be performed, is changed or affected in any manner by the new act.

■ Besides, in our opinion, the terms, "appointment and election of public officers" in the Governor's call include, *ex vi termini,* the right to *create* offices. It would have been a vain and useless thing for the Legislature to pass a *new* law providing for the "appointment and election of public officers," *already* appointed or *already* elected. Such a law would have been without an object to operate upon, or a purpose to justify its enactment.

On the other hand, it was a necessary and reasonable thing for the Legislature to create in the *new* law the offices to be filled by appointment and election.

■ "Where an act is susceptible of two constructions, one of which makes the act unconstitutional and the other makes it constitutional, the construction should be adopted which makes it constitutional." State v. Wilson & Co., 179 La. 648, 662, 154 So. 636, 640; State ex rel. Varnado v. La. Highway Comm., 177 La. 1, 7, 147 So. 361; Sample v. Whitaker, 174 La. 245, 252, 140 So. 36.

■ The title of an act may express one general purpose and be sufficient. State v. Hincy, 130 La. 620, 58 So. 411; City National Bank v. Mahan, 21 La.Ann. 751.

■ The title of an act is not to be strictly or technically construed. Municipality No. Three v. Michoud, 6 La.Ann. 605; City National Bank v. Mahan, 21 La.Ann. 751.

Since the law does not require the object designated in the Governor's call or message to be as comprehensive and clear as in the title of an act, it is difficult to understand why the call or message in this case is not sufficient as to the object of the legislation.

(2) Counsel for defendants and interveners also contend that Act 22 of the Third Extraordinary Session of 1934 is unconstitutional, as the act was never read in full in either House or Senate, in violation of section 24 of article 3 of the State Constitution.

This section provides that: "Every bill shall be read on three different days in each house, and no bill shall be considered for final passage unless it has been read once in full, and the same has been reported on by a committee."

The House Journal, page 42, of December 18, 1934, shows that Act 22, which was House Bill 15 was read in full.

The Senate Journal of December 20, 1934, page 83, shows that Act 22, which was House Bill 15, was read in full on final passage.

The only complaint is that the bill was never read in full· in either the House or the Senate. The Journals of the House and Senate show that the bill was read in full in both Houses.

■ Oral testimony was offered to vary the recitals of the Journals, and the trial judge correctly sustained the objections against its admissibility.

The official Journals of the House and Senate, when published and preserved, constitute the ultimate proof of verity of the proceedings. No extrinsic proof is admissible for the purpose of contradicting the facts therein recited.

State ex rel. Morris v. Mason, Secretary of State, 43 La.Ann. 590, 9 So. 776; White v. Hinton, 3 Wyo. 753, 30 P. 953, 17 L.R.A. 66; Common Council of Detroit v. Board of Assessors, 91 Mich. 78, 51 N.W. 787, 16 L.R.A. 59. See, also, Louisiana State Lottery Co. v. Richoux, 23 La.Ann. 743, 745, 8 Am.Rep. 602; Whited v. Lewis, 25 La.Ann. 568, 569; Barnard v. Gall & Pharr, 43 La.Ann. 959, 962, 10 So. 5.

■ It is well settled that the Journal of the proceedings of each House is a public record, of which the courts are at liberty to take judicial notice.

■ The trial judge, Hon. W. Carruth Jones, found this attack upon the constitutionality of the act without merit, and we concur in that conclusion.

(3) Act 22 of the Third Extraordinary Session of 1934 is also attacked as being in violation of section 3 of article 14 of the present Constitution.

This section provides that: "The Legislature shall provide *optional plans* for the organization of parochial government, and any parish may change from one plan, so prescribed, to another, when authorized by a majority of the electors voting at an election held for such purpose." (Italics ours.)

On July 9, 1914, the Legislature passed Act 190 of 1914, "Providing for the election in each parish of the State of Louisiana, the Parish of Orleans excepted at the next ensuing General State and parochial election after the adoption of the provisions of this act by the people of any parish, and quadrenially thereafter, of a Commissioner of public affairs, a Commissioner of finance and a Commissioner of public improvements; * * * and providing that the police juries be superseded by the said board; * * * providing the method by which any parish which may have operated under the provisions of this act for more than six years may abandon the form of government provided in this act, and return to and resume its original form of government."

Act 190 of 1914 having been passed seven years before the adoption of the Constitution of 1921, manifestly, was not passed in pursuance of section 3 of article 14 of the present Constitution.

And as there is no corresponding provision in any former Constitution of the state, Act 190 of 1914 was not enacted in pursuance of any provision of any Constitution adopted in this state. Nor has the Legislature of this state, since the adoption of the Constitution of 1921, ever adopted any act to carry into effect section 3 of article 14 of the present Constitution.

■ That this section is not self-operative is evident, since it declares that: *"The Legislature shall provide optional plans for the organization of parochial government, and any parish may change from one plan, so prescribed, to another, when authorized by a majority of the electors voting at an election held for such purpose."* (Italics ours.)

So, it is apparent that Act 190 of 1914 is nothing more nor less than an attempt by the Legislature in the year 1914 to create a commission form of government for parishes similar to the plan of commission form of government created for cities.

Besides, the act is in conflict with section 11 of article 5 of the Constitution of 1921, providing that the "Legislature may provide the mode of filling all offices created by it." As the office of police juror is created by the Legislature, the lawmaking body has unquestionably the constitutional right to provide for the appointment or election of police jurors in the parishes of

the state, and has actually done so by the adoption of Act 22 of the Third Extraordinary Session of 1934.

It will be time enough for this court to consider the effect that any act passed under section 3 of article 14 of the Constitution may have, after the Legislature has enacted such legislation.

 This attack upon the constitutionality of Act 22 is without merit.

(4) It is also contended that Act 22 of the Third Extraordinary Session of 1934 violates section 5 of article 4 of the Constitution, which provides that: "The Legislature shall not indirectly enact special or local laws *by the partial repeal* of a general law; but laws repealing local or special laws may be passed." (Italics ours.)

It is argued that, while Act 22 purports to be *a general law* relative to the police juries of the state, the proviso of the act applies solely to "the parish in which the *State Capitol* is situated," that being the parish of East Baton Rouge; and that, therefore, Act 22 is an attempt to enact, by indirection, a local or special law *by the partial repeal* of the general laws with reference to police juries, in violation of section 5 of article 4 of the present Constitution.

The object of Act 22 is expressed in its title as follows: "An Act relative to the police juries of the State; authorizing the election and appointment of police jurors in all of the parishes of this State, the Parish of Orleans excepted, and repealing all laws in conflict herewith."

Section 1 is almost a literal re-enactment of Act 161 of 1894, the only difference being a slight change in phraseology, and the addition of the thirteen appointive members, not in the parish where the "State Capitol is situated," but in the parish in which "the State Capital is situated," now and wherever it may be situated in the future.

Section 2 is a literal re-enactment of Act 196 of 1906, and section 3 is a literal re-enactment of Act 279 of 1908.

Section 3 repealed all laws or parts of laws in conflict with the act.

Counsel for defendants state in their attack upon the constitutionality of Act 22 that "it in fact tracks the then existing law on the subject (Act 84 [94] of 1884, as amended by Act 161 of 1894, and Act 196 of 1906, and Act 279 of 1908—Dart's Revised Statutes, Sections 6382, 6383, 6384)," except as to the proviso.

Act 22 of the Third Extraordinary Session of 1934, and the former acts above cited, all relate to the same subject. The latter act re-enacts the subject-matter of all the former acts, thereby covering the whole subject-matter therein dealt with, and embraces a new provision as to police jurors in the parish where the state capital is situated, thereby plainly showing that it was intended as a substitute for all of the former acts, and a supersession of the former acts by the latter act.

As said in Knight v. Webster Parish School Board, 164 La. 482, 487, 114 So. 104, 106: "It is a familiar principle, it is true, that repeals by implication are not favored, but on the other hand it is equally a well set-

tled rule of law that where the obvious purpose of a law is to cover the whole subject-matter therein dealt with, it supersedes all prior legislation pertaining thereto.

. "In United States v. Tynen, 11 Wall. 88, 20 L.Ed. 153, one of the leading cases on the subject, the Supreme Court of the United States said:

" 'And even where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act.'

"And our own court in Wood v. Bateman, 149 La. 290, 88 So. 824, said:

" 'The act thus quoted, being independent legislation, not only repealed or superseded *all previous legislation in conflict with its provisions,* but obviously, to cover the whole subject-matter with which it deals, it superseded *all prior legislation pertaining thereto.'* " (Italics ours.) See, also, Cook County Nat. Bank v. United States, 107 U.S. 445, 2 S.Ct. 561, 27 Law Ed. 537.

The repeal in such a case is a *total,* and not a *partial,* repeal of a general law, and, necessarily, does not violate section 5 of article 4 of the Constitution of 1921 providing that:

"The Legislature shall not indirectly enact special or local laws *by the partial repeal* of a general law." (Italics ours.)

In our opinion, Act 22 of the Third Extraordinary Session of 1934 is independ-

ent legislation. The Legislature, without doubt, intended, by this act, to make a new law, complete in itself; and it repealed all other laws on the subject embraced within it.

As said in Barnard v. Gall & Pharr, 43 La.Ann. 959, 961, 10 So. 5, 6: "It is not a question of consistency or inconsistency of the two acts; it is a question of the supersession of the former by the later act. The rule is well settled, as declared by Mr. Sedgwick, that, even though the two statutes be not repugnant or inconsistent, yet if they related to the same subject-matter, and the later statute was clearly intended to prescribe the only rule that shall govern, it will repeal the former act."

The trial judge, Hon. W. Carruth Jones, found this attack upon the constitutionality of Act 22 without merit, and we concur in that conclusion.

Nor are we of the opinion that Act 22 of the Third Extraordinary Session of 1934 is a local or special law.

As was held in State v. Dalon, 35 La. Ann. 1141, 1144: "The real distinction between public or general laws and local or special laws is, that the former affect the community as a whole, whether throughout the State or one of its subdivisions; and the latter affect private persons, private property, private or local private interests."

Act 22, as seen from its title, is a general law and applies to all police juries of the state. In fact, it is all of the general law on the subject of the election

and appointment of police juries. It is true that certain provisions of the act apply to the parish in which the state capital is located, and the parish of Orleans is excepted, but that does not have the effect of making the act a local law.

Besides, the parish of Orleans has been excepted from the operation of the act as there is no police jury in that parish, because the city of New Orleans is coextensive with the limits of the parish of Orleans, and the entire territory is governed by the city. The parish of Orleans, therefore, is territory in which the act could not operate.

The act deals solely with police jurors who hold offices created by the Legislature; and as the Legislature may prescribe the mode of filling all offices created by it, it may also prescribe a mode in one parish different from that in another, involving the same character of office.

An act dealing with police jurors in a particular parish would not be a local or special law, because it would affect state offices and state officers whose authority by general laws extends to all citizens, property owners, and taxpayers of the parish regardless of their residence.

The act operates equally and uniformly upon all brought within the relations and circumstances for which it provides. The effect of the act, in its relation to the citizens of the parish in which the state capital is located, and the general citizenship of the state in the parishes in which it operates, is equal and uniform.

In the recent case of Williams v. Guerre, 182 La. 745, 162 So. 609, 616, No. 33,409 on the docket of this court, we affirmed the judgment of Judge Womack of the Nineteenth district court, upholding Act 27 of the Third Extra Session of 1934 relative to deputy sheriffs, which made provisions relative to the deputy sheriffs of East Baton Rouge and Orleans different from provisions relative to other portions of the state. This court quoted and adopted Judge Womack's decision as its own. The part of the opinion pertinent to the issues here involved is as follows:

"Act No. 27 of 1934 * * * is not a special or local law. It is a law passed by the Legislature on the subject of the appointment of deputy sheriffs throughout the state, and, while it is true that different provisions were made for their appointment in the parishes of East Baton Rouge and Orleans, this fact does not make the act special or local law.

"As pointed out in the opinion recently rendered by the Supreme Court, State ex rel. Porterie, Attorney General, v. Jones, Judge, 181 La. 390, 159 So. 594, a deputy sheriff holds an office which has been created by the Legislature, and is therefore a state officer. If the Legislature prescribed the mode of filling all offices created by it, it may also prescribe a mode in one parish different from that in another, involving the same character of office.

"In the case of State v. Donato, 127 La. 393, 53 So. 662, the Supreme Court held:

" 'A law, general in its terms, applying to all persons * * * is not a "local

law" * * * merely because the conditions under which it can operate prevail only in certain parts of the state.'

"Many cases could be cited directly in line with the opinion in the Donato Case, but suffice to say that the jurisprudence of this state is in accord with the general rule announced in 59 C.J. 730, as follows:

" 'It is not necessary that a law, in order to be general, shall affect all of the people of the State, or all of the State, nor need it include all classes of individuals; it may be intended to operate over a limited number of persons or things, or within a limited territory, the law may be general although presently operative on but a single individual, or thing, place, or political subdivision, such as a county or municipal corporation; and its general character is not affected by the number of persons, things or localities which come within the scope of its operation.' "

An act relating to the establishment of ferries by police juries of the several parishes is not a local or special law because the parish of Orleans is excepted. Blanchard v. Abraham, 115 La. 989, 40 So. 379; Police Jury v. Robichaux, 116 La. 286, 40 So. 705.

Articles 48–50, Constitution of 1913, have no application to a statute which defines and relates to every subdivision of the state, except the city of New Orleans. Thomas v. Board of School Directors, 136 La. 499, 67 So. 345.

We quote further from 59 C.J. 536: "A statute is not a local or special law

within the meaning of constitutional provisions requiring notice if persons or things throughout the State are affected, or if it operates on a subject in which the people at large are interested, even though its enforcement be restricted to a particular locality, *or if an act is both general and special or private.*" (Italics ours.)

If Act 22 is both general and local or special, it is not a local or special law and must be maintained. State v. Clements, 220 Ala. 515, 126 So. 162; 59 C. J. 536–538, § 29.

The trial judge, Hon. W. Carruth Jones, found no merit in this attack upon the constitutionality of the act, and we concur in that conclusion.

(5) Defendants and interveners attack Act 22 as being in violation of section 6 of article 4 of the Constitution, because of its passage without conforming to the requirements of that section as to publication at least thirty days prior to the introduction into the Legislature of the bill, the contention being that Act 22 is a local or special law.

Under the authority of State ex rel. Sewerage & Water Board v. Michel, 127 La. 685, 53 So. 926, even if Act 22 were a local or special law, section 6 of article 4 of the Constitution would not be applicable, since the act was passed at a Special or Extraordinary Session.

The correctness of the Michel Case has never been challenged or disputed. On the contrary, its doctrine was reaffirmed in the

recent case of Williams v. Guerre, 182 La. 745, 162 So. 609, 616, No. 33,409, from which we quote the following: "In the case of State ex rel. Sewerage & Water Board v. Michel, Secretary of State, 127 La. 685, 53 So. 926, the Supreme Court used the following language:

" 'The power conferred by article 75 of the Constitution on the Governor to convene the General Assembly to legislate on designated subjects, and on the General Assembly so to legislate, presupposes an urgent necessity for prompt action, and the exercise of such power is not controlled by the requirement, of article 50 of the Constitution, that previous notice of intention to enact local or special laws, not prohibited by article 48, shall be published for 30 days, without expense to the state.'

"Assuming that Act No. 27 of 1934 * * * was a local or special law, even in that event, under the decision of the above-quoted case, which seems to be the only case upon the point, section 6 of article 4 would not be applicable."

The trial judge, Hon. W. Carruth Jones, found no merit in this attack upon the constitutionality of Act 22, and we concur in that conclusion.

(6) It is urged by defendants and interveners that Act 22 of the Third Extraordinary Session is unconstitutional as being contrary to and violative of the fundamental principles of a Republican form of government as provided by the Constitution of the state of Louisiana, and guaranteed by section 4 of article 4 of the Constitution of the United States, because it is discriminatory, arbitrary, and punitory in so far as it affects the people of the parish of East Baton Rouge by depriving them of the right to elect their local self-government, while granting such right to the people of the other parishes of the state.

The Legislature of this state has not only the legal right to create the office of police juror, but it has the clear and indisputable right, under article 5, § 11, of the present Constitution, to provide for the filling of the office of police juror, either by election or by appointment, as the Legislature, in its discretion, may determine.

The people themselves have conferred such right upon the Legislature in the organic law of this state. The exercise, therefore, of such right by the Legislature is neither the arbitrary invasion of the right of local self-government, nor an unwarranted infringement upon the Republican form of government but is, necessarily and essentially, legal, valid, and constitutional.

If the people wish to recall such right and reinvest it in themselves locally, they must do so by the orderly method of an amendment to the Constitution, the fundamental and paramount law of this state, which must prevail and be respected and upheld by the courts of the state.

It is manifest, therefore, that Act 22 of the Third Extraordinary Session of 1934 cannot possibly be declared unconstitutional, for lack of constitutional right or authority in the Legislature to pass such an act.

Article 4, § 4 of the Constitution of the United States provides:

"The United States shall guarantee *to every State in this Union* a Republican Form of Government."

 In the first place, this is a guarantee *to the states,* as such. Texas v. White, 7 Wall. 700, 721, 19 L.Ed. 227.

In that case, the Supreme Court of the United States said in part: "And there are instances in which the principal sense of the word [state] seems to be that primary one to which we have adverted, of a people or political community, as distinguished from a government.

"In this latter sense the word seems to be used in the clause which provides that the United States shall guarantee *to every State in the Union* a republican form of government, and shall protect each of them against invasion.

"In this clause a plain distinction is made between a State and the government of a State." (Italics ours.)

 In the second place, it is settled jurisprudence that the guarantee in the Federal Constitution to the states of a Republican form of government does not extend to the systems of local government for the municipalities, counties, and parishes of a state.

The following cases, cited in note 6 to article 4, § 4, part 2, Constitution, U.S.C. A., definitely establish this interpretation of the guarantee clause:

"The purpose of the Federal Constitution was to provide a form of government, republican in character, for the states as a united whole, and not to control the systems of local government, and. therefore a statute is valid providing a form of municipal government which ignores the features of executive, legislative, and judicial departments, and commits the functions of government to a single board or body. Eckerson v. Des Moines (1908) 137 Iowa, 452, 115 N.W. 177.

"A state constitutional provision which vests in cities and towns 'the exclusive power to license, regulate, control, or to suppress or prohibit the sale of intoxicating liquors therein,' does not trench upon a republican form of government. State v. Hearn (1911) 59 Or. 227, 115 P. 1066, rehearing denied (1911) 59 Or. 232, 117 P. 412."

"An act providing for municipal government by a city manager does not contravene this section. Sarlls v. State ex rel. Trimble (1929) 201 Ind. 88, 166 N.E. 270, [67 A.L.R. 718]. "

In a footnote to its opinion in that case the court set out numerous supporting authorities, from the courts of the states of Alabama, Mississippi, Florida, Texas, Kentucky, Kansas, Missouri, Iowa, Illinois, Minnesota, Nebraska, Colorado, Utah, West Virginia, Washington, Wyoming, and Oregon.

 In the third place, the question whether this constitutional guarantee has been violated is not a judicial but a politi-

cal question, committed to Congress, and not to the courts. Mountain Timber Co. v. Washington, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685, Ann.Cas.1917D, 642.

 Even if the guarantee of a Republican form of government in the Federal Constitution extended to parishes, Act 22, in our opinion, would still not be a violation of such guarantee.

The trial judge, Hon. W. Carruth Jones, found no merit in this attack upon the constitutionality of the act, and we concur in that conclusion.

(7) The last ground urged by the defendants against the constitutionality of Act 22 is contained in an amended answer, and is as follows: "That the *police juries* of the State of Louisiana form and constitute *a part of the legislative department of goverment* under the Constitution and laws of the State of Louisiana, and that the vesture or attempt to vest in the Governor or Executive Department of the State the authority to appoint members of a police jury tends to destroy the independence of the Legislative Department of government; renders the Legislative or a part of the Legislative Department of government subservient to the Executive Department, and makes it possible for the Executive Department to exercise undue influence and control over a part or branch of the Legislative Department of government, contrary to public policy, public welfare and in violation of the principles of a republican form of government, and in violation particularly of article 2 of the

Constitution of the state of Louisiana, and of section 4 of art. 4 of the Constitution of the United States." (Italics ours.)

Article 2 of the present Constitution reads as follows:

"§ 1. The powers of the goverment of the State of Louisiana shall be divided into three distinct departments—legislative, executive, and judicial.

"§ 2. No one of these departments, nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the others, except in the instances hereafter expressly directed or permitted."

Article 3, § 1 of the Constitution provides that "The legislative power of the State shall be vested in a Legislature, which shall consist of a Senate and a House of Representatives."

In State v. Watkins, 176 La. 837, 839, 840, 147 So. 8, 9, it is said: "Section 1 of article 3 of the Constitution 1921 vests the legislative power of the state in the Legislature, composed of the Senate and the House of Representatives. There is no suggestion in the Constitution, or reason to infer, that the Legislature may delegate its legislative power to the electors themselves, except the provision in article 21 that the Legislature shall submit to the electors for their approval or rejection all resolutions proposing amendments to the Constitution itself, and may, at the same session, enact laws to carry the proposed amendments into effect, and to have effect only if and when the proposed amendments are ratified.

"The writers on the subject of constitutional limitations agree, and show by their compilations of judicial decisions, that it is settled that the legislative power conferred upon the Legislature, under constitutional provisions like those of the Constitution of Louisiana, *cannot be by the Legislature delegated to the electors, or to any other body or authority.* Cooley's Constitutional Limitations (8th Ed.) vol. 1, pp. 224, 238, 239, 240, 242, 244; 12 C.J. § 323, pp. 839 and 840; § 324, pp. 841 and 842; R.C.L. § 165, p. 164; § 166, p. 165; § 167, pp. 166, 167, 168." (Italics ours.)

On page 840 of 176 La., on page 9 of 147 So., of the opinion in that case it is said: "That principle does not forbid the Legislature to enact local laws dependent for their effect upon a vote of the electors of the locality to be affected, or to enact a general law or municipal charter to govern only such municipalities as may see fit to adopt it by a majority vote of the electors in the municipality."

On page 841 of 176 La., on page 10 of 147 So. of the opinion it is also said: " 'The government of the State is democratic, but it is a representative democracy, and in passing general laws the people act only through their representatives in the legislature.' " Quoting Cooley's Constitutional Limitations (8th Ed.) vol. 1, p. 238.

There is neither constitutional nor statutory provision in this state that makes police jurors a part of the legislative department of goverment. If such a statute should be enacted, it would be palpably unconstitutional.

It is certain, therefore, that police juries are not a part of the legislative department of government, since the legislative power conferred upon the Legislature by the Constitution cannot be by the Legislature delegated to these bodies. In other words, the Legislature, under the present Constitution, cannot delegate to police juries the power to legislate or make a law.

It is also certain that police juries are no part of the judiciary department of government.

As there are only three general departments of government, police juries must be classified as being in the executive department of government. Saint v. Allen, 169 La. 1046, 1066, 126 So. 548.

"A police jury is not a legislative body, and its members are not legislators." They are "officers of a political corporation." State ex rel. Gorham v. Montgomery, 25 La.Ann. 138.

Police juries are political corporations whose powers are specially defined by the Legislature, and they can legally exercise no other power than those delegated to them. American Ice Co. v. Police Jury, 162 La. 614, 619, 110 So. 878; Sterling v. West Feliciana Parish, 26 La.Ann. 59; State ex rel. Gorham v. Montgomery, 25 La.Ann. 138; Ouachita Parish v. Monroe, 38 La.Ann. 630; State v. Miller, 41 La. Ann. 53, 5 So. 258, 7 So. 672; Parish of Concordia v. Natchez, R. R. & T. R. Co., 44 La.Ann. 613, 10 So. 809.

Police juries execute or enforce the limited police powers delegated to them by

the Legislature through the passage of local ordinances and resolutions, and, in doing so, they exercise only administrative powers.

The Legislature cannot delegate to such bodies the power to enact a law or to legislate, since that power is vested exclusively in the Legislature by the present Constitution.

As already stated, it is provided in section 1 of article 3 of the Constitution of 1921 that "The legislative power of the State shall be vested in a Legislature, which shall consist of a Senate and a House of Representatives."

In the same Constitution it is also provided in section 11 of article 5 that "He [the Governor] shall nominate, and, by and with the advice and consent of the Senate, appoint all officers whose offices are established by this Constitution and whose appointment, or election, is not herein otherwise provided for; except that the Legislature may provide the mode of filling all offices created by it."

The Legislature has created the office of police juror, and has provided the mode of filling that office in Act 22 of the Third Extraordinary Session of 1934. In doing so, the Legislature has exercised its exclusive power or function to legislate.

■ The appointment by the Governor of the additional members of the police jury in the parish in which the state capital is situated, and whose appointment has been provided for in that act, is purely and solely an administrative or executive act upon the part of the Governor of this state, and, in no reasonable way, can be construed as the exercise of legislative power, in violation of section 2 of article 2 of the present Constitution.

In its final analysis, the contention of counsel for defendants and interveners would make, not only police jurors but mayors and members of city councils throughout the state, legislators, and a part of the legislative department of government, in direct violation of the plain letter and clear intent of the present Constitution.

■ The trial judge, Hon. W. Carruth Jones, found no merit in this attack upon the constitutionality of Act 22 of the Third Extraordinary Session of 1934, and we concur in that conclusion.

Defendants in their answers pray, in reconvention, that Act 22 of the Third Extraordinary Session of 1934 be declared unconstitutional, and for a perpetual injunction restraining plaintiffs from interfering with the functioning of the police jury of East Baton Rouge, or with the elected members thereof, who have also intervened in the suit, uniting with defendants, in resisting the claims of plaintiffs.

Interveners have also attacked the constitutionality of Act 22 of the Third Extraordinary Session of 1934, and pray for an injunction, restraining plaintiffs from interference with interveners in the administration of their affairs and duties, as the alleged rightfully constituted police jury of the parish of East Baton Rouge.

For the reasons assigned, it is ordered that the judgment appealed from be annulled and reversed.

It is now ordered that there be judgment in favor of plaintiffs, and against defendants and interveners, declaring Act 22 of the Third Extraordinary Session of 1934 of the Legislature of this state constitutional and valid, and that the preliminary injunction in favor of plaintiffs herein issued be and the same is hereby perpetuated.

It is further ordered that the reconventional demand of defendants, and the demand of interveners, to have said act declared unconstitutional and for injunctions against plaintiffs be and the same are hereby rejected, and that the suit of interveners be dismissed.

O'NIELL, C. J., and ROGERS and ODOM, JJ., dissent.

O'NIELL, Chief Justice (dissenting).

Whenever in the discharge of my official duties I find that an act of the Legislature is, in my judgment, unconstitutional, I deem it my duty to explain why it is so, particularly in matters of great public importance.

The all-important question in this case is whether the Constitution of Louisiana permits the Legislature to enact a special or local law taking away from the people of one parish—and only one parish—their right of local self-government, without previous publication or warning of the intention to enact such a law, especially in an Extraordinary Session of the Legislature. That question is of vital importance not only to the people of the parish of East Baton Rouge, whose right of local self-government has been taken from them without warning, but also to the people of every other parish, and of every city, town, and village in the state, who yet enjoy the right to elect the members of their local governing authority.

The Constitution of Louisiana, like the Constitution of every other state, as everybody knows, imposes certain limitations upon the authority of the Legislature to enact laws. These constitutional limitations, or guaranties, are intended to protect minorities of the people. The majorities can protect themselves.

Act No. 22 of the Third Extraordinary Session of the Legislature of 1934, which took away from the people of the parish of East Baton Rouge their right of local self-government, violates both the letter and the spirit of several guaranties in the Constitution.

In the first place, the statute was enacted in violation of section 14 of article 5 of the Constitution, which declares that the Legislature, in an Extraordinary Session, shall not enact any law having an object not "specially enumerated" in the proclamation of the Governor convening the Extraordinary Session. This limitation upon the authority to legislate, in Extraordinary Sessions, is stated in section 14 of article 5 of the Constitution in very plain terms, thus:

"The power to legislate, under the penalty of nullity, shall be limited to the ob-

jects specially enumerated in the proclamation of the Governor, or petition and notice, convening such extraordinary session."

The only effect, and hence the only object, of Act No. 22 of the Third Extraordinary Session of 1934 was to deprive the people of the parish of East Baton Rouge of their right of local self-government. That was obviously the only possible result or effect that the act could have; hence it was, unquestionably, its only object. The object was accomplished by declaring that, in the parish in which the state capital is situated, the Governor shall appoint as many additional members of the police jury as there are members elected by the people. That is the only change that was made in the law, as it stood before the adoption of this new statute. According to the general law on the subject of police juries throughout the state, which law is embodied in sections 6382, 6383 and 6384 of Dart's compilation of the General Statutes, the voters in each police jury ward, in every parish in the state (except in the parish of Orleans), elect their own police jurors; and the number of police jurors is apportioned according to the population of the wards. The parish of Orleans, of course, is excepted from the provisions of the law on the subject of police juries, because this parish is coextensive with the city of New Orleans, which is governed by a commission council. According to the general law (embodied in sections 6382, 6383 and 6384 of the General Statutes), at the time when Act No. 22 was introduced in the Third Extra-

ordinary Session of the Legislature of 1934, the police jury of the parish of East Baton Rouge, according to its population, was composed of thirteen members, who were elected by the people. Act No. 22 of that session is an exact copy or production of sections 6382, 6383 and 6384 of the General Statutes, except that, in section 1 of the new statute, there is inserted the proviso that, in the parish in which the state capital is situated, the Governor shall appoint as many additional members of the police jury as there are members elected by the voters of that parish. That proviso, which merely doubled the membership of, and changed the method of selecting, the police jury of the parish of East Baton Rouge, is the only change that was made in the law; hence this proviso in the law is all that was really enacted. The law remains exactly as it was in all of the other parishes throughout the state, with regard to the membership and the election of the police juries, while the people of the parish of East Baton Rouge are denied the right to elect even a majority of the twenty-six members of their local governing authority. That result was accomplished as effectually as if the Legislature had boldly declared its intention to enact only the new part of the law, as a special or local law for the parish of East Baton Rouge, instead of putting it in as a proviso, in a reproduction or copy of the general law, exactly as it stood before. Here is how the proviso reads:

"Provided, however, that in the parish in which the State capital is situated there shall be appointed by the Governor, by and

with the advice and consent of the Senate, to serve for terms of 4 years, as many additional members of the police jury as there are members elected. The members of the police jury of the parish in which the State Capital is situated to be appointed under this Act shall be appointed by the Governor after this Act takes effect, and their terms shall expire with the term of the Governor appointing them."

As I have pointed out, even if this new statute were a general law, in reality and not merely in form, prescribing the method of selection, and the number of members, of the police juries throughout the state, the statute would yet be violative of that provision of the Constitution which forbids the Legislature, in an Extraordinary Session, to enact any law having an object not "specially enumerated" in the proclamation of the Governor convening the Extraordinary Session. There was nothing in the list of objects "specially enumerated" in the Governor's proclamation, in this instance, putting any reasonable person upon his guard against the enactment of a statute that would have for its object and effect the taking away from the inhabitants of one particular parish—and of only one parish—the right of local self-government.

Among "the objects specially enumerated in the proclamation of the Governor," the only one which the Attorney General points to and relies upon—and which a majority of the members of this court say was a sufficient notice to the public of the intention to enact this new statute—is object No. 16, which was expressed in the Governor's proclamation calling the Legislature in Extraordinary Session, thus:

"For the consideration of, and action upon, the following specially enumerated objects, to-wit: * * *

"16. Appointment and election of public officers."

The most that can be said of this object, "Appointment and election of public officers," is that its publication might have given the public some vague and hazy idea that the Legislature would be called upon to consider and act upon legislation concerning the appointment or election of some or all of the public officers occupying the offices already in existence, throughout the state. There was no suggestion of the creation of new offices. And certainly there was no "special" mention of an intention to enact a law that would have the object and effect of creating thirteen new offices, for thirteen additional police jurors, for the parish of East Baton Rouge, to be appointed by the Governor, so as to double the membership of the police jury of that parish, and thereby to deprive the inhabitants of the parish of the right to elect even a majority of the members of their local governing authority.

It is true that the Governor is not required by the Constitution to describe in detail, in his proclamation calling the Legislature in Special Session, the statute or statutes which he intends to submit to the Legislature. But the object or objects of such legislation must be "specially enumerated in the proclamation of the Governor",

to use the exact language of the Constitution. This has no meaning whatever, and serves no purpose whatever, if the Governor may, in his proclamation calling the Legislature in Special Session, state the object or objects thereof in such vague and indefinite terms that nobody will be informed in advance of the object or objects of the legislation intended to be enacted. Special Sessions of the Legislature are of very short duration, and are intended to be called only on occasions of emergency, and only for the enactment of laws that are deemed to be immediately necessary. The same section of the Constitution that we are now considering (section 14 of article 5) declares that the Governor "may, on extraordinary occasions" convene the Legislature in Special Session; which means that he shall not convene the Legislature in Special Session except "on extraordinary occasions" and for the enactment of laws which he deems immediately necessary. For that reason it is highly important to enforce the guaranty that the Legislature, in a Special Session, under the penalty of nullity, shall not enact any statute having an object not specially enumerated in the proclamation of the Governor convening the Extraordinary Session of the Legislature.

It is said of this new act, in the majority opinion in this case:

"No *new* offices are created by the act, but simply incumbents of offices already existing are provided for."

I respectfully submit that thirteen *new* offices are created by the act. That is exactly what this court said in the opinion which was rendered in this very case, last May, when the case was before us on a writ of mandamus to compel the judge of the district court to grant a preliminary injunction. The opinion which was rendered in the case at that time is published in volume 182 of the Louisiana Reports, at page 662, and in volume 162 of the Southern Reporter, at page 413, 422. In order to decide, at that time, whether the Governor and the Attorney General and a majority of the twenty-six members of the police jury, as newly constituted, were entitled to a writ of injunction, one of the important questions was whether this new statute *created new offices*; and the decision of the question was stated thus:

"Act No. 22 does not abolish any of the offices of the police jurors of East Baton Rouge, *but creates thirteen new and additional offices,* which the Governor is authorized to fill."

I do not understand how it can be said now that this act, No. 22, does not create thirteen new and additional offices. The fact that a number of offices of the same character existed before Act No. 22 was adopted was not deemed to be in conflict with the statement made in the former opinion, rendered in this case, that this new statute "creates thirteen new and additional offices."

This brings me to another provision in the Constitution which was violated in the enacting of this statute, depriving the inhabitants of the parish of East Baton Rouge of their right of local self-govern-

ment. Section 4 of article 4 of the Constitution forbids the Legislature to enact any local or special law on certain "specified subjects," which are enumerated in that section. Section 6 of the same article forbids the Legislature to enact any local or special law, on any subject not forbidden by section 4, "unless notice of the intention to apply therefor shall have been published, without cost to the State, in the locality where the matter or things to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into the Legislature of such bill, and in the same manner provided by law for the advertisement of judicial sales." This section of the Constitution declares also that the evidence of the fact that the notice has been published shall be exhibited in the Legislature before the act can be passed, and that the act itself shall contain a recital that the notice was published. There is no such recital in Act No. 22 of the Third Extraordinary Session of the Legislature of 1934; and it is admitted that there was no publication whatever of an intention to enact or to introduce any such statute as this.

It is said in the majority opinion in this case that this court decided in the case of State ex rel. Sewerage & Water Board of New Orleans v. John T. Michel, Secretary of State, 127 La. 685, 53 So. 926, 928, that this constitutional provision, requiring previous publication of an intention to enact a special or local law, was not applicable to the enactment of such a law in an Extraordinary Session of the Legislature. The decision that was rendered in the case cited is not at all appropriate to the present case. In the case cited, the statute which was in contest was an act amending a statute relating to the sewerage and water board. Although the statute relating to the sewerage and water board was embodied in the Constitution, it was declared therein that the Legislature might amend the statute, except in certain particulars; and it was also declared therein that any provision in the Constitution contrary thereto was thereby repealed. What this court decided, therefore, was that the special provision in the Constitution, authorizing the Legislature to amend (in certain respects) the constitutional provisions on the subject of the sewerage and water board, and expressly repealing all contrary provisions in the Constitution, should prevail over the general provisions requiring the publication of an intention to enact a special or local law. Having so decided, the court added, unnecessarily, that the authority of the Governor to call the Legislature in Extraordinary Sessions, "in order that it may legislate on matters of urgent necessity," and the authority of the Legislature to legislate in such sessions, was independent of the restriction imposed by article 50 (now section 6 of article 4) of the Constitution, "since the necessity for immediate legislation which would justify the convening of the General Assembly in extraordinary session could not be expected to yield to the requirement that notice of the intention so to legislate should be published for 30 days, without expense to the state." It was said, in the

course of the opinion in that case, that the object of the statute in contest was to do "something required for the successful prosecution of the great public work that had been undertaken, and the matter was regarded as of such importance that, on November 16, 1910, the Governor issued his proclamation," etc. It appears also, in the published opinion rendered in the case cited, that the object of the legislation intended to be enacted was "specially" mentioned in the proclamation of the Governor convening the Legislature in Extraordinary Session. For the reasons I have given, the decision rendered in the case of State ex rel. Sewerage & Water Board v. Michel, Secretary of State, is not at all applicable to this case, where there was no immediate need for the local law, depriving the inhabitants of the parish of East Baton Rouge of their right of local self-government, and where there was no mention of such legislation in the proclamation of the Governor, convening the Extraordinary Session of the Legislature. In this instance, no warning was given to the people of the parish of East Baton Rouge, or to the public, either in the proclamation of the Governor, as required by section 14 of article 5 of the Constitution, or by publication for thirty days, as required by section 6 of article 4 of the Constitution.

Another section of the Constitution that was violated in the enacting of this statute is section 5 of article 4, which declares: "The Legislature shall not indirectly enact special or local laws by the partial repeal of a general law." That is exactly what the Legislature did in this in-

stance. The author of this statute copied, word for word, the general law on the subject of police juries, and inserted a proviso relating only to the parish of East Baton Rouge, and then added a repealing clause, repealing only such laws or parts of laws as were in conflict with the new act. Of course, the only part of the new act which the general law was in conflict with was the proviso, relating to the parish of East Baton Rouge. Thus the Legislature, in this roundabout way, did "indirectly" adopt a local law, for the parish of East Baton Rouge, by a partial repeal of the general law on the subject of police juries throughout the state.

In 1897, the Legislature of Missouri, "indirectly," enacted a local or special law, for the city of St. Louis, by a partial repeal of the general law on the subject of judges of the probate courts throughout the state; and the Supreme Court of Missouri held that the statute was unconstitutional, because it violated section 53 of article 4 of the Constitution of that state, declaring that the Legislature should not "indirectly" enact a special or local law by the partial repeal of a general law. The decision was rendered in the case of Henderson v. Koenig, 168 Mo. 356, page 372, 68 S.W. 72, 76, 57 L.R.A. 659. The only difference between that case and this is that, in that case, the proviso in the new statute referred to the probate judges, and was applicable only to the city of St. Louis, whereas, in this case, the proviso in the new statute refers to police juries, and is applicable only to the parish of East Baton Rouge. In principle, therefore, the Mis-

souri case and this case are exactly alike. According to .section 3407 of the Revised Statutes of Missouri, of 1889, the probate judge in every county throughout the state, and in the city of St. Louis, received fees for his services. Under section 4160 of the Revised Statutes of Missouri, of 1899 (Mo.St.Ann. § 655, p. 4899), the city of St. Louis was treated as a county. By an act of the Legislature, approved March 20, 1897 (p. 82) which became section 1764 of the Revised Statutes of 1899, the Legislature repealed and at the same time re-enacted section 3407 of the Revised Statutes of 1889, exactly as it was, but added a proviso, to the effect that in cities having a population of 300,000 or more inhabitants, the probate judge should receive a salary instead of fees. St. Louis was the only city having a population of 300,000 or more inhabitants. The Supreme Court, therefore, held that the new statute, which had become section 1764 of the Revised Statutes of 1899, was a local and special law, referring only to the probate judge in the city of St. Louis. The Supreme Court decided, therefore, that the statute was null, because it violated the constitutional prohibition against the enacting, indirectly, of a local or special law by the partial repeal of a general law. The court said, referring to the general law, section 3407 of the Revised Statutes of 1889, this:

"This law, as it thus and then stood, applied to *every judge of probate in the state of Missouri.* And if the legislature then, without repealing in terms the statute just quoted, had enacted into a law the pro-viso [which] section 1764 now contains, no one, it seems, could doubt that such additional enactment would have amounted to the partial repeal of a general law, and the consequent enactment of a special or local law; because, in such cases, *the partial repugnancy* would accomplish the *partial repeal.* Potter's Dwar.St. 113, 155, and cases cited; Suth.St.Cons., §§ 137, 138, and cases cited.

"But the case is in nowise altered by reason of the fact that such repeal was in reality accomplished by the *pretended and formal amendment* by enacting as a part and parcel of section 1764 the proviso aforesaid, which declares the *old law intact save in the city of St. Louis, and save in regard to the then incumbent of the office of judge of probate in that city.* If such legislation as this can be sustained, then there is neither force nor efficacy in the constitutional prohibition which forbids that the legislature 'indirectly enact such special or local law by the partial repeal of a general law.'

"The act in question is *local* as to the city of St. Louis, and *special* as to the incumbent of the office of judge of probate."

This Missouri case is not mentioned in the majority opinion in the present case, notwithstanding it was cited and quoted from extensively in the oral arguments and in the printed briefs of the attorneys for the defendants in this case. I do not see how the majority opinion in the present case can be reconciled with the ruling in the Missouri case, which is sound in principle.

Several decisions are cited in the majority opinion in this case to the effect that a statute which purports to contain all of the law on the subject dealt with supersedes and in effect repeals all previous laws on the same subject. That doctrine is applicable only to cases where the new statute omits a provision that was contained in a previous statute on the same subject. In such cases the presumption is that the Legislature intended to repeal the omitted provision of the previous law. But that has nothing to do with this case, where the new statute is an exact copy of the previous statutes on the subject of police juries, and is supplemented by a proviso relating only to the police jury of one parish. The idea which is intended to be conveyed by these citations in the majority opinion in this case is that Act No. 22 of the Third Extraordinary Session of 1934 is an entirely new law, and that, inasmuch as it refers to the police juries in all other parishes, besides the parish of East Baton Rouge, the new law is not a local law, but a general law. The answer to that is that, with the exception of the proviso which applies only to the parish of East Baton Rouge, the new statute is merely an exact reproduction and a perpetuation of the previous law on the subject of police juries, and is not a new law, in any other sense than that the printer's ink and the paper on which the law is reproduced are new. In the sense in which we speak of a law, whether it be a general law or a local or special law, there is nothing new in Act No. 22 of the Third Extraordinary Session of 1934 except the proviso which is applicable only in the parish

of East Baton Rouge, and therefore a local law. What this court said in the case of Federal Land Bank v. John D. Nix, Jr., Enterprises, 166 La. 573, 117 So. 720, 722, is very appropriate, viz.:

"To hold, under these circumstances, that this act is a general one, would be to hold that, by a mere form of words, the Legislature may make what is in reality a local act a general one, and thereby defeat not only the requirement as to publication of intention, but also those prohibitions, or some of them, in the Constitution against enacting, under any circumstances, local laws on certain subjects."

It has been held, consistently, heretofore, by every court that has ever passed upon the question, and is maintained by all of the law-writers on the subject, that a law that applies to only one county in the state (or one parish in this state) is a local law, within the meaning of the term in the Constitution of the state.

Act No. 22 of the Third Extraordinary Session of 1934 violates also section 3 of article 14 of the Constitution, which declares that the Legislature shall provide optional plans for the organization of parochial government, and that any parish shall have the right, by a majority vote of the electors of the parish, to adopt either of the plans so prescribed. That provision in the Constitution emphasizes how faithfully and positively the framers of the Constitution sought to insure the right of local self-government, to the inhabitants of every parish in the state. The Legislature had enacted already a statute, Act No. 190

of 1914, providing, in detail, a commission form of government for the parishes throughout the state, leaving it optional with the inhabitants of each parish to adopt the new form of government, if they saw fit, by a majority vote of the electors of the parish. Section 3 of article 14 of the Constitution, therefore, is merely a confirmation of what was done by Act No. 190 of 1914, and an insistence upon the reservation, to the inhabitants of each and every parish, their right of local self-government. Act No. 22 of the Third Extraordinary Session of 1934 deprives the inhabitants of the parish of East Baton Rouge of their constitutional right, or option, either to adopt the commission form of government, prescribed by Act No. 190 of 1914, or to continue with the governing authority which they had before Act No. 22 of the Third Extraordinary Session of 1934 went into effect. It is said in the majority opinion in this case that Act No. 190 of 1914 is unconstitutional, in that it is in conflict with section 11 of article 5 of the Constitution, which section was article 71 in the Constitution of 1898 and of 1913, and which declares "that the Legislature may provide the mode of filling all offices created by it." My answer to that is that the Legislature *did provide,* in Act No. 190 of 1914, the mode of filling the offices created, or to be created, thereby. To say "that the Legislature *may* provide the mode of filling all offices created by it" is not the same as to say how the Legislature *shall* provide for the mode of filling the offices created by it. Hence I see no justification whatever for the court's holding that the Legislature, by adopting Act No. 190 of 1914, violated the constitutional provision that the Legislature *may* provide for the mode of filling all offices created by it.

There are other provisions of the Constitution which the defendants in this case say are violated by Act No. 22 of the Third Extraordinary Session of the Legislature of 1934; but I do not consider it necessary to discuss them. Any one of the violations of the Constitution that I have mentioned is sufficient to render the statute null. As the Supreme Court of the United States said, in the case of Norton v. Shelby County, 118 U.S. 425, 442, 6 S. Ct. 1121, 1125, 30 L.Ed. 178, 186, "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

My apology for the length of this opinion is, as I said at the beginning, that the case is of great public importance. If the constitutional guaranties which I have referred to are so limp and impotent that they do not safeguard the people against such anomalous legislation as Act No. 22 of the Third Extraordinary Session of 1934, these safeguards ought to be strengthened and made more effective, to the end that the government of Louisiana shall remain always and in truth a government of laws and not of men.

### On Application for Rehearing.

### PER CURIAM.

By isolating one sentence from the majority opinion of this court, which was hand-

ed down when the case was originally decided here, and one sentence from the majority opinion now before us on an application for a rehearing, an attempt has been made to show that the majority members of the court have contradicted themselves on a vital issue in the case.

This case first came before this court on an application for a writ of mandamus by the Governor and the Attorney General of the state of Louisiana, the thirteen appointed police jurors and four of the elected police jurors, of the parish of East Baton Rouge, to compel the district judge to issue an injunction against the defendants, the nine elected police jurors, the sheriff and his deputies of the parish, the district and the assistant district attorneys of the Nineteenth judicial district; and the treasurer of the police jury to protect the newly appointed police jurors in the exercise of the functions of their offices, against the unlawful interference and harassment by the defendants. The trial judge refused to grant the injunction and sustained the exceptions of no right or cause of action on the ground that the alleged interference and harassment were of such a nature as to render the effects of said acts null and void and therefore the plaintiff could not be in any sense legally injured.

On application for writs to this court, which were granted, and while reviewing the issue as to the right of the thirteen appointed members of the police jury to institute the suit, we said:

"Act No. 22 does not abolish any of the offices of the police jurors of East Baton Rouge, *but creates thirteen new and additional offices, which the Governor is authorized to fill.*

"In the instant case there is no contest over the title to office. The police jurors are not claiming one another's offices. This is neither an intrusion into office nor quo warranto proceeding. The two contending groups held their respective offices as members of the police jury independently of each other. The whole difficulty results from the alleged minority members of the police jury ignoring the thirteen appointed members on the ground that they were illegally appointed and allegedly interfering with the plaintiffs in the performance of their duties as members of the police jury.

"Plaintiffs show that they have duly qualified and are in possession of their new offices, and allege that the defendants are interfering with them in the discharge of their duties.

"In the case of Guillotte v. Poincy, 41 La. Ann. 333, 6 So. 507, 5 L.R.A. 403, it was held that a de facto officer in possession of his office was entitled to an injunction to protect him against interference by claimants whose title to the office is disputed, until the latter shall establish title to the office by judicial proceedings, according to law. State ex rel. Gillespie v. Judge, 42 La.Ann. 1172, 8 So. 883; Goldman v. Gillespie, 43 La.Ann. 83, 8 So. 880; Jackson v. Powell, 119 La. 882, 44 So. 689; State ex rel. Bourg v. Turner, 152 La. 828, 94 So. 411.

"While those cases are not directly in point here, *because there is no dispute as to titles to the same offices by different claim-*

*ants,* it follows as a corollary from those authorities that officers are entitled by injunction process to maintain themselves in peaceful possession *of their new office* against *unlawful interference,* until the *invalidity* of their appointment has been declared in a judicial proceeding. This is particularly true where the constitutionality of the statute authorizing their appointments is only questioned out of, but not in, court.

"It is our opinion that the *thirteen appointed members of the police jury* had an interest and right to bring this proceeding to protect them against interference in the enjoyment of their offices." 182 La. 662, 162 So. 413, page 422. (Italics ours.)

In the majority opinion, which is now before us on rehearing, in disposing of one of the alleged grounds of unconstitutionality, we stated: ,

"It is also argued by counsel for defendants and interveners that the terms in the Governor's call, 'appointment and election of public officers,' do not include *the creation* of officers.

"No new offices are created by the act, but simply incumbents of offices already existing are provided for.

"The office of 'police juror' has been upon the statute books of this State for a hundred years. The act merely provides for the appointment and election of 'additional police jurors.' Neither the character of the office, nor the duties to be performed, is changed or affected in any manner by the new act.

"Besides, in our opinion, the terms, 'appointment and election of public officers' in the Governor's call include, *ex vi termini,* the right to *create* offices. It would have been a vain and useless thing for the Legislature to pass a *new* law providing for the 'appointment and election of public officers,' *already* appointed or *already* elected. Such a law would have been without an object to operate upon, or a purpose to justify its enactment.

"On the other hand, it was a necessary and reasonable thing for the Legislature to create in the *new* law the offices to be filled by appointment and election."

A reading of these opinions, and particularly the parts which we have hereinabove quoted, will show that an unwarranted construction has been placed upon the language used in them, and therefore the statement that they are contradictory is without foundation.

The majority opinion under consideration states that the controversial statute does not create a new office in the sense that it brings into existence an office heretofore unknown to the law, but authorizes the appointment of new and additional police jurors, and that this office has been in existence in this state for over one hundred years. In the previous opinion, we adopted the language "new and additional offices" to differentiate the new or appointed police jurors from the old or elected ones. But, in any event, to show how unfounded the criticism is, and how it misconstrues the views of the majority members of the court, we call attention to the fact that, although we

say in the majority opinion that "the terms, 'appointment and election of public officers' in the Governor's call include, ex vi termini, the right to create offices," meaning that, conceding new and additional offices are created, nevertheless, the Governor's call was sufficient to include the creation of those offices. Since no attempt is made to quote, explain, or answer this holding, it appears that this reasoning was considered sound. We conclude that there is neither contradiction nor conflict between the two opinions of this court.

Complaint is made that while the case of Henderson v. Koenig, 168 Mo. 356, page 372, 68 S.W. 72, 77, 57 L.R.A. 659, was cited in appellee's brief, dealing with the subject of local or special laws, no reference was made to it in the main opinion. It is not uncommon to omit authorities cited in the briefs when they are considered inapplicable. This is particularly true where there is a division of authority. We seldom refer to all the cases cited in the briefs or distinguish them.

Aside from the explanation which we gave in the majority opinion with reference to this particular issue, we point out that the views of the Supreme Court of Missouri were not in accord with the views of the courts of New York on this subject. Under the well-recognized doctrine in this state that all doubts as to the constitutionality of a statute must be resolved in favor of its validity, the Missouri case would not be controlling, because a reading of the opinion itself shows that there is a difference of opinion on this subject between the two lines of authorities. This is specially shown where the court quotes with approval this language: "We would not give it [the doctrine that recognizes the constitutionality of such legislation] our sanction, however it might be buttressed by authority." (Brackets ours.)

The main objection is that such legislation takes away from the people their right to so-called "local self-government or home rule." The judge of the district court, who lives in the parish where the capital is located, after a full trial with reference to this contention, concluded that the argument was untenable. We know of no provision in the Constitution, nor has any been pointed out to us, which gives a municipality or parish, which are subdivisions of the state, created by the state Legislature, a right superior to the sovereign state to govern the people within their territorial limits.

There are numerous authorities which hold that the courts are not concerned with the reasons or policy or political considerations which prompt the Legislature to enact laws. The courts are without the right, power, authority, or jurisdiction to determine whether a law is beneficial or detrimental to the people. They are not allowed to consider the policy and effect of the law upon the civil, social, and political rights of the citizens of a state, unless that statute transcends and violates constitutional limitations.

The Legislative department of government has tremendous power which may be exercised even against public welfare without violating the provisions of the Constitution. This is the main reason why so very few laws are declared unconstitutional.

A number of the restrictions upon the Legislature's right to pass laws which affect the powers of parochial and municipal governments, or so-called "home rule or local self-government," found in the Constitutions of 1898 and 1913, were deliberately omitted from the Constitution of 1921, as conclusively shown by Governor Parker's proclamation calling that convention, and the address of the president of the convention.

In the recent case of State ex rel. Porterie, Attorney-General et al. v. Walmsley, Mayor et al., 183 La. 139, 162 So. 826, in which this court upheld the constitutionality of certain legislation affecting the sewerage and water board of the city of New Orleans, and in which case the Supreme Court of the United States (under Board of Liquidation, City Debt of New Orleans, et al. v. Board of Commissioners of the Port of New Orleans, et al., 296 U.S. 540, 56 S.Ct. 141, 80 L.Ed. ——), dismissed the appeal, we quoted Governor Parker's letter recommending a Constitutional Convention and his proclamation calling the convention, because a similar issue as to "home rule" was there raised and decided in favor of the sovereign state.

We now call attention to the pertinent parts of the opening address of Honorable Hewitt Bouanchaud, president of the Constitutional Convention of 1921:

"The people of Louisiana have decreed that they shall have a new organic law. They have provided the machinery that is to draft for them *a constitution adaptable to the present and future needs of society.* * * *

"The powers delegated to this convention may be said to be almost plenary. We have grave problems to grapple with and to solve. * * *

"In the matters relating to taxation, the judiciary, the franchise, education, conservation, good roads, and in matters of government generally—state, municipal, and parochial—both the brain power and energy of this convention are going to be drafted to the fullest limit.

*"It has been suggested that flexibility and elasticity will have to be given to certain constitutional provisions if we are to avoid a recurrence of constitutional amendments. Another means of avoiding the necessity for a multiplicity of amendments to the constitution which has suggested itself to many minds, is to leave out of the constitution all matters not essentially fundamental. The doing of these two things will, of necessity, mean the enlargement of legislative authority. The limitations of constitutional grant to legislative authority will be among the most important considerations of this convention; for it is easy to conceive that an unbending article which changed conditions in the State can render archaic, and which bars necessary legislative action, will furnish its own argument for repeal or amendment."* (Italics ours.) Compilations of the Constitutions of Louisiana, by Huey P. Long, p. 708.

The people, through their delegates to the Constitutional Convention, having eliminated the limitations on legislative power to pass laws affecting the rights to municipal and parochial governments, can only re-

place them by constitutional amendments or a Constitutional Convention. The courts are powerless to restore these inhibitions and limitations.

It is our opinion that the Legislature did not violate any inhibitions upon its rights to pass the statute under attack. That is as far as the bounds of propriety and our jurisdiction permit us to go. We have no suggestions to make with reference to purely controversial political matters. Those questions must be settled through the means of elections, the Legislature, constitutional amendments, or a Constitutional Convention. We have confidence in the intelligence and courage of the people to bring about any reformations and changes in government which they may deem to be necessary, but we certainly will not, while discharging our judicial duties, make recommendations therefor, or assume the leadership of such movements.

There is nothing in the record in this case to show that the government of the state of Louisiana, as presently constituted, is a government of men and not a government of law.

There is nothing before this court to show that the constitutional rights of a minority of the citizens are being transgressed by an aggressive majority, any more than there is to show that a militant minority of citizens are stubbornly endeavoring to frustrate and defeat the will of the majority of citizens.

The members of the House of Representatives and the members of the Senate, elected by a majority of the people, passed this statute. Being the chosen representatives of the people, the statute, in legal contemplation, is an expression of the will of the majority of citizens. These officials, who are sworn to uphold the Constitution, were of the opinion that the act was constitutional, otherwise they would not have voted for it.

The members of the Legislative Bureau, created by the Constitution of 1921, art. 3, § 31, composed of the Attorney General, elected by the people, or his assistant, and two members of the Legislature, one selected by each House, who are charged with the duty of passing upon the constitutionality of bills introduced in both Houses, were of the opinion that the act is constitutional.

The Governor of the state, selected by a majority of the citizens, and sworn to uphold the Constitution, having the benefit of the legal advice of the Attorney General's office, also felt that the act was constitutional, and approved it, otherwise he would have vetoed it.

Therefore, we have before us an expression of the will of the majority of the citizens, resulting from the action of two departments of the government, and the judicial department has authority and jurisdiction to annul the statute only in the event it clearly appears that the limitations of the Constitution have been violated.

Chief Justice Bermudez, in the case of City of New Orleans v. Robira, 42 La.Ann. 1098, at page 1102, 8 So. 402, 404, 11 L.R.A. 141, said:

*"The acts of a legislature are to be treated with great respect, as they emanate from a*

*co-ordinate and powerful branch of govern-ment. They must be presumed to be consti-tutional, unless they be shown manifestly to have transgressed or violated the organic law.* In this case the presumption, far from having been destroyed, has been established as well-founded." (Italics ours.)

Rehearing refused.

O'NIELL, C. J., adheres to his dissenting opinion.

ROGERS and ODOM, JJ., adhere to their dissent.