140 So. 36

SAMPLE et al. v. WHITAKER et al.

No. 31232.

Jan. 4, 1932.

Rehearing Denied Feb. 29, 1932.

Lee & Gilmer, of Shreveport, for appellants.

Frank J. Looney and Cook & Cook, all of Shreveport, for appellees.

**ST. PAUL, J.**

This is the same case which we already had before us and in which we handed down the opinion on January 5, 1930 (171 La. 949, 132 So. 511, 516) remanding the case "to be reopened for the purpose of receiving evidence on and deciding the plea of prescription of ten years acquirendi causa, and for the purpose of considering and deciding the question of constitutionality or unconstitutionality of Act No. 64 of 1924, p. 91."

The general facts of the case are stated in the opinion then handed down, and need not be repeated here in full; but we shall briefly sum them up so far as they are pertinent to the issues now before us, and state such further facts as are necessary for those issues.

### I.

S. G. Sample, father of the other plaintiffs, acquired certain lands during the existence of the community between himself and his wife, their mother, whose heirs they are.

On November 20, 1911, during the lifetime of his wife, he sold said lands to one York Whitaker, Jr., the same person who was defendant in the case of Sample v. Whitaker, 172 La. 722, 135 So. 38, decided April 27th, 1931. In that sale Sample reserved to himself all the mineral rights in the land.

On November 21, 1911, York Whitaker, Jr., sold said lands to Isaac Whitaker, the defendant in this case. In that sale no mention was made of the reservation of mineral rights by Sample, nor did York Whitaker himself reserve any mineral rights; but the deed from York Whitaker to Isaac Whitaker purports to convey the full ownership of the land and all its appurtenances (a fee-simple title).

Thereupon Isaac Whitaker, the defendant here, went into immediate possession of the lands and has been in possession ever since; and there is no evidence that he had any knowledge of the reservation of the mineral rights made by Sample, or that he purchased otherwise than in good faith.

Mrs. Sample died in September, 1918, before ten years' prescription, whether liberandi causa or acquirendi causa, had accrued against her. She left seven minor children, her sole heirs, against whom said prescription, or prescriptions, of ten years ceased to run.

We are not here concerned with the ten years' prescription liberandi causa. In Sample v. Whitaker, 172 La. 722, 135 So. 38, it was decided that it was still the law that the ten years' prescription liberandi causa did not run against minors; and we adhere to that opinion. Moreover, this case was remanded, as was said, at the beginning, for the sole purpose of considering the plea of ten years' prescription acquirendi causa, herein relied upon by the defendant and the constitutionality vel non of Act No. 64 of 1924, also relied upon by the defendant in support of his plea of prescription acquirendi causa. We will therefore confine ourselves to those two issues.

### II.

This is a suit by Sample and his children now of age or duly represented, to revendicate title to the minerals under said lands, but claimed by the defendant by the prescription of ten years' acquirendi causa, that is to say, by possession of ten years in good faith and with title translative of the property. The suit was filed May 6, 1930.

### III.

█ As Mrs. Sample's heirs were minors at the time of her death, prescription ceased to run against them under the old law (R. C. C. art. 3522) as it stood before the passage of Act No. 161 of 1920. But under the very plain and unambiguous provisions of that statute it again began to run against them, but was not to accrue before they reached the age of twenty-two years. As to this there is no room for interpretation, the statute simply speaks for itself.

### IV.

Of the seven heirs of Mrs. Sample, Frances, wife of Bolton, completed her twenty-two years on June 12, 1924; Eleanore, on October 15, 1927; S. G., Jr., would have completed his twenty-second year on November 26, 1928, but died December, 1927; Oliver H. P. completed his twenty-second year November 22, 1930; Katherine will complete her twenty-second year only on June 7, 1933; Wilton W., on November 3, 1936; and Staunton B., July 31, 1938.

### V.

It will thus be seen that, regardless of the act of 1924, herein complained of, and even considering the same unconstitutional, the prescription acquirendi causa had run against the first three named minors, to wit: Frances, wife of Bolton, Eleanore and S. G., Jr., and his heirs, when this still was filed on May 6, 1930; for all three of these had completed, or would have completed their twenty-second year when this suit was filed; and if we add to the six years, nine months, and ten days between the sale by York to Isaac on November 21, 1911, and the date of Mrs. Sample's death on September 1, 1918, to the eight

years, four months, and five days which elapsed between the effective date of Act No. 161 of 1920 (January 1, 1922), and the date of the filing of this suit (May 6, 1930), we have fifteen years, one month, fifteen days, during which the prescription acquirendi causa ran against them and their heirs.

Accordingly the interest of these three (say three-fourteenths) and that of S. G. Sample (say seven-fourteenths) have been lost by the prescription acquirendi causa in favor of the defendant.

### VI.

On the other hand, at the time of the filing of this suit on May 6, 1930, Oliver H. P., as will be seen above, had yet until November 22, following, to complete his twenty-second year; and Katherine will not complete hers until June 7, 1933, nor Wilton W. until November 3, 1936, nor Staunton B. until July 31, 1938.

It is therefore patent on the face of Act No. 161 of 1920 (disregarding Act No. 64 of 1924) that the prescription had not run against them under that act at the time this suit was filed; for that prescription could not accrue against them until they completed their twenty-second year; which they had not yet completed.

### VII.

Act No. 64 of 1924 was approved by the Governor on July 7, 1924, and became effective on July 30, 1924. Therefore, if the new provisions of that act, making prescription applicable to the minor heirs of any "party," not himself a minor, be given retroactive effect, then the prescriptive time which had elapsed against these minors at the time said act became effective (July 30, 1924), was nine

■■■■■■■■■■■

years, four months, and nine days, being the sum of the time which elapsed between the sale by York to Isaac and the death of Mrs. Sample, added to the time which elapsed between the effective date of the act of 1920 and that of the act of 1924. Accordingly, these four minors would then have had only seven months and twenty-one days after the effective date of that act to assert their cause of action, instead of having until they respectively reached the age of twenty-two years. But that is a mere coincidence. Had their mother died, say, a year later than she did, thereby adding a year to the total prescriptive time elapsed, they would have been peremptorily shut off from their cause of action at the moment the act became effective (July 30, 1924), with only twenty-three days' notice after the signing of the act by the Governor on July 7, 1924.

■ And there are doubtless some minors, probably many, who were so situated that they would have been shut off from their causes of action immediately upon the act of 1924 going into effect, with only the twenty-three days' notice aforesaid, if we declare the act of 1924 retroactive and not merely prospective. And, as to those so situated, we think that the delay (notice) granted to them would be so very short as to amount to a taking of property without due process of law.

### VIII.

Therefore, as to minors so situated, it is clear that the act, if given the retroactive effect contended for by defendant, will be violative of the Fourteenth Amendment to the Constitution of the United States and therefore void.

■■ But it is a familiar rule of law that, if a statute is capable of two constructions, one of which will save the statute and the other damn it, that construction will be adopted which will save the statute. And if the act of 1924 be given only prospective force, a construction of which it is clearly capable, then the act is wholly unobjectionable. Therefore, as to all minors who would have been peremptorily shut off from their causes of action when the statute went into effect, if the act be declared retroactive, that construction must be rejected, and another construction adopted which gives the act only prospective force, thus removing from the act its only objectionable feature.

### IX.

■■ But a statute cannot be retroactive as to some persons and only prospective as to others, unless the Legislature has indicated a manifest intention that it should be so; for the presumption is that a statute is intended to apply alike and equally to all persons unless the contrary clearly appears.

Therefore, since the act of 1924 must be considered only prospective as to some minors, and nothing in that act draws any distinction between minors, even though differently situated and therefore capable of being differently classified, the act must be applied to all minors in the same way; otherwise we will be giving the act two different meanings, though it is manifest that the Legislature intended but one meaning. We are therefore of the opinion that Act No. 64 of 1924 has no retroactive effect, but only prospective force; and under the provisions of that act the prescription acquirendi causa which was suspended as to the minor heirs

"of a party," not himself a minor, began to run against them only from and after the effective date of that act.

Nothing said above is in conflict with our holding in Thomann v. Dutel, 158 La. 1026, 105 So. 52, nor with Palmer Corporation v. Moore, 171 La. 774, 132 So. 229.

## X.

Under Act No. 161 of 1920, prescription acquirendi causa, which until then did not run against minors, was made to run against them; with this proviso, however, that it should not accrue or be completed until such minors accomplished full twenty-two years; and that the same period of prescription should apply to the heirs of such minors and not be suspended even during their minority.

So that under that act any minor had, until he reached his twenty-second birthday, the right to assert a cause of action which might otherwise be lost under the prescription acquirendi causa by possession in good faith for ten years with a title translative of the property; and, if he died before reaching his twenty-second birthday, his heirs, whether of full age or still minors, had the same time in which to assert that cause of action as he himself would have had, had he lived.

But this was not so, because the act did not make it so, as to the heirs of a person of full age who died after the prescription had begun to run against him. If such heirs were of full age when their de cujus died, prescription continued to run against them and would accrue and be completed in the same time as if he had continued to live. But if, upon the death of a person against whom

said prescription had begun to run, he left minor heirs, this prescription, which formerly under the Code would have ceased to run against them, continued still to run, and was not suspended during their minority, but they had until they reached their twenty-second birthday, at least, in which to assert a cause of action which otherwise might have been barred against their de cujus, and if in turn these minors died, their heirs, whether of age or themselves minors, would simply have stepped into their shoes and be barred at the same time as the deceased minor would himself have been barred, had he lived.

## XI.

But this last was changed by the Act No. 64 of 1924, and that was the only change made by the act.

It left the prescription applicable to a minor undisturbed where such minor was the first against whom the adverse possession began to run; that is to say, the minor against whom this prescription first began to run still has at least until he reaches his twenty-second birthday in which to assert his cause of action, unbarred by the acquisitive prescription of ten years; and, if he die before that time, his heirs, whether majors or minors, simply step into his shoes and are barred.

But if the person against whom this prescription first began to run were of full age, or an interdict, or married woman, or absentee, or other person whatsoever (other than a minor), then said prescription, having once begun to run, continues to run as before his or her death, and bars his or her heirs at the same time at which it would have barred him or her, had he or she con-

tinued alive; that is to say, at the end of ten years from the time when the adverse possession began unless interrupted.

### XII.

For convenience we reproduce the two acts, No. 161 of 1920, and No. 64 of 1924, but have divided them in paragraphs so as to bring out more clearly their meaning. Thus:

Act No. 161 of 1920 amends R. C. C. art. 3478 so as to read as follows:

"Article 3478. (1) He who acquires an immovable in good faith and by a just title, prescribes for it in ten years.

"(2) This prescription shall run against interdicts, married women, absentees and all others now excepted by law;

"(3) and as to minors this prescription shall accrue and apply in twenty-two years from the date of the birth of said minor;

"(4) provided that this prescription shall run against the heirs of said minor and shall not be interrupted in favor of any minor heirs of said minor.

"(5) Provided that this act shall take effect on January 1st, 1922."

And Act No. 64 of 1924 amends R. C. C. art. 3478 so as to read as follows:

"Article 3478. (1) He who acquires an immovable in good faith and by just title prescribes for it in ten years.

"(2) This prescription shall run against interdicts, married women, absentees and all others now excepted by law;

"(3) and as to minors this prescription shall accrue and apply in twenty-two years from the date of the birth of said minor;

"(4) provided that this prescription once it has begun to run against a party shall not be interrupted in favor of any minor heirs of said party."

### XIII.

We have thus given the two acts in full and our interpretation of them. We have shown above that, even under the act of 1920 the cause of action as to the interests of Sample himself and of his three oldest children is barred, it remains now but to show that the cause of action as to the interest of the three youngest children is also barred.

When Mrs. Sample died, prescription had been running six years, nine months, and ten days. At her death it was suspended and ceased to run against her minor heirs, under the Code and until Act No. 64 of 1924 went into effect. When that act went into force, it began once more to run against them. Only three years, two months, and twenty days from the effective date of that act (July 30, 1924) were needed to complete the full ten years. This delay expired October 20, 1927. After that date their cause of action was effectively barred. This suit was filed May 6, 1930; being therefore two years, six months, and sixteen days too late.

### XIV.

The trial judge correctly held that Act No. 64 of 1924 was constitutional; for so it is, when interpreted as we have interpreted it above. He also correctly interpreted said act and properly sustained the plea of prescription filed by the defendants and dismissed the suit of the plaintiffs.

### Decree.

For the reasons assigned the judgment appealed from is affirmed.