HIGGINS, Justice..
 

 The relator, for extra work performed, obtained a judgment by default against the Drainage District on June 19, 1928, for the sum of $3,640.36, with legal interest thereon from March 10, 1926, and having had the judgment revived on June 16, 1938, now seeks by mandamus to collect the amount due thereunder. ■
 

 The relator alleged that the additional work was performed under a contract between it and the Drainage District for the purpose of supplementing the main drainage project and perfecting and completing the system of gravity drainage; .that the cost of the main project was $19,897.86, and the cost of the additional work was $3,926.78; that more than 80% of the project had been completed at the time the additional work was ordered to be done; that the costs of the extra work did not exceed 20% of the total cost of the entire drainage system; that all of the property, real and personal, belonging to the defendant is exempt from execution, but the governing authority of the Drainage District is. authorized, under the provisions of Act No. 227 of 1928, to provide for the payment of the judgment; and that the relator has no adequate remedy to enforce the payment of the judgment, except through a writ, of mandamus, which should be issued for the, purpose of commanding the governing authority of the Drainage District to comply with the provisions of the Statute.
 

 The defendant filed exceptions of no right and no cause of action on the ground (1) that Act No. 227 of 1928 is not retroactive but prospective, and as the extra or additional work was performed prior to the time the Act went into effect, the Statute was inapplicable; and (2) the power conferred by Act No. 227 of 1928 is discretionary with the governing authority and mandamus cannot be invoked to compel it to comply with its provisions.
 

 The district judge maintained the exceptions on the ground that the Act was not retroactive. The relator appealed.
 

 
 *1019
 
 By reference to the petition upon which the relator obtained the moneyed judgment by default against the Drainage District, a copy of which is annexed to and made a part of its application for the writ of mandamus, it appears that the defendant Drainage District was organized and operating under the provisions of Act No. 238 of 1924; that the taxpayers authorized a bond issue of $25,000, for the purpose of having a gravity drainage system; that the cost of the main drainage project was the sum of $19,897.86, which amount did not include administrative and engineering cpsts; that under the instructions of the engineer of the district, dated January 26, 1926, in order to complete the drainage system, the extra or additional work, which is the basis of the present claim, was performed; that the work was completed on March 10,-1926 ; and that the extra work was neither authorized by the members of the Board of the Drainage District, nor by an election held by the taxpayers of the District.
 

 The plaintiff’s judgment was signed on June 19, 1928, and Act No. 227 of 1928 was approved and signed by the Governor on July 18, 1928, and became effective twenty days after the adjournment of the Legislature, or on August 4, 1928, under the provisions of Article 3, Section 27 of the Constitution of Louisiana of 1921. Therefore, the provisions of Act No. 238 of 1924 governed the transaction in question.
 

 Section 11 of Act No. 238 of 1924, provides that drainage districts, through their governing authorities, shall have the power to levy an ad valorem or acreage tax only upon the approval of the matter by the qualified electors of the district at a special election called for that purpose.
 

 Section 13 of the Statute states that drainage districts, through their governing authorities, shall impose and collect annually, in addition to the tax authorized by Article XIV, Section 14(a) of the Louisiana Constitution of 1921, an acreage tax or forced contribution not exceeding
 
 50‡
 
 per acre, per year, for a period not exceeding forty years, when the governing authorities were petitioned by two-thirds in amount of the land owners, owning more than two-thirds of the acreage in the drainage district, to impose and collect such a tax. However, the governing authority was powerless, under Act No. 238 of 1924, to levy an ad valorem or acreage tax or forced contribution by a mere resolution or ordinance, as provided for by Act No. 227 of 1928.
 

 Section 14, paragraph (o) of Article XIV of the Cqnstitution reads, as follows:
 

 “§ 14(c). In addition to the power and authority granted to the Legislature of Louisiana under the above and foregoing provisions of Section 14 of Article XIV of the Constitution, the Legislature of Louisiana may by general law authorize gravity drainage districts and gravity sub-drainage districts, through the governing authority thereof, when debts have been incurred and ad valorem or acreage taxes levied as authorized in the above and foregoing provisions of Section 14 of Article XIV, without further submission to the property taxpayers, to incur an additional indebtedness and levy additional ad valorem or acreage taxes or forced contributions, and fund same into
 
 *1021
 
 bonds, all within the limits prescribed in said provisions for the purpose of perfecting and completing any system of gravity drainage, eighty (80%) percent of which shall have been accomplished at the time of incurring said additional indebtedness or levying of such additional taxes.”
 

 In accordance with this constitutional authorization, the Legislature passed Act No. 227 of 1928, which reads:
 

 “To carry into effect the provisions of paragraph (o) of Section 14 of Article XIV of the 1921 Constitution of the State of Louisiana, which paragraph was an amendment to said Constitution, proposed by Act 173 of 1924 and adopted at an election held on November 4th, 1924, to authorize gravity drainage districts and gravity subdrainage districts, through their respective governing authorities, (when debts have been incurred and ad valorem or acreage taxes have been levied, as authorized by Section 14 of Article XIV of the Constitution of 1921), without further submission to the property taxpayers, to incur an additional indebtedness and levy an additional ad valorem or acreage tax or forced contribution, and fund same into bonds, for the purpose of perfecting and completing any system of gravity drainage, eighty per cent (80%) of which shall have been accomplished at the time of incurring this additional indebtedness and the levying of such additional tax, and to provide the procedure therefor.
 

 “Section 1. Be it enacted by the Legislature of Louisiana, That gravity drainage districts and gravity subdrainage districts, through their respective governing authorities, when debts have been incurred and ad valorem or acreage taxes have been levied, as authorized by the provisions of Section 14 of Article XIV of the Constitution of 1921, for the construction of a gravity drainage system, may, without further submission to the property taxpayers, incur an additional indebtedness and levy an additional ad valorem or acreage tax or forced contribution, and fund same into bonds, all within the limits .prescribed in said provisions, for the purpose of perfecting and completing, or of paying the expense or cost of perfecting and completing, said system of gravity drainage, eighty per cent (80%) of which shall have been accomplished at the time of incurring said additional indebtedness and the levying of said additional taxes.
 

 “Section 2. That in any case where it becomes necessary, or it is desired, by the' governing authority of any gravity drainage district or sub-drainage district to exercise the authority granted by Section 1 of this act, such governing authority shall first cause to be made, by its supervising engineer or other .competent engineer, an estimate of the work already done on the system of drainage which has been adopted, and if it be found by such estimate that eighty per cent (80%), or more, of the system has been completed, such governing authority shall authorize, by proper ordinance, the creation of an additional indebtedness and shall levy [an] additional ad valorem or acreage tax or forced contribution, and fund same into bonds, for the purpose of perfecting and completing such system of gravity drainage, or of paying any indebtedness incurred or to be incurred
 
 *1023
 
 in completing same, not to exceed, however, twenty per cent (20%) of the total cost of such system of drainage. That all other or further procedure for the purpose aforesaid, shall be as now or hereafter provided by law for the creation of indebtedness, the levying of taxes and forced contributions and the funding of same into bonds by gravity districts or gravity subdrainage districts for gravity drainage purposes, except that it shall not be necessary to submit the proposition to the vote of the property taxpayers.”
 

 The trial judge analyzed and construed the pertinent provisions of the Statute in a written opinion, which we quote with approval:
 

 “Relator contends that these provisions (Sections 1 and 2 of Act No. 227 of 1928) are applicable to the instant case; or, in other words, that the provisions of the 1928 Act should be given retrospective effect and applied to the instant case. The court cannot agree with this contention. A reading of the Act itself, together with what the court believes was the situation which apparently the Legislature sought to reach, impel the court to the opinion that the Act was intended to apply, and does apply, only to situations existing at the time of its enactment and to situations which might arise after its passage.
 

 “Apparently what induced the Legislature to enact this law is that in some instances drainage districts, after they had created indebtedness and issued bonds under special elections for the purpose, found themselves confronted with a situation of having a project incomplete, but with 80% or more of the work accomplished. Tjhat situation might arise by reason of rising costs, or to engineering difficulties, to the desire to accomplish more work than originally planned, etc. In either of these contingencies, under the Act of 1924 another election was required. The Act of 1928 was no doubt adopted to obviate an election in such cases, provided the new work or additional funds required did not amount to more than 20%. Had the Legislature intended the new act to apply to situations arising prior to its enactment, it seems to the court different language would have been used, * * _ * language more definitely referring to past facts.
 

 “Section 1 of the Act sets forth the situations above referred to, and then provides for funding a tax into bonds ‘for the purpose of perfecting and completing, or of paying the expense or cost of perfecting and completing said system, of gravity drainage, eighty per cent (80%) of which shall have been accomplished at the time of incurring said additional indebtedness and the levying of said additional taxes.’ This language is prospective, not retrospective. If the Legislature had said ‘for the purpose of having completed and perfected, or of paying the expense or cost of having perfected and completed’ then the court would say that it applies to the work done in 1926 as in the instant case.
 

 “If any doubt remained on this point after reading Section 1, all doubt is dissipated when Section 2 is read. That Section provides that ‘In any case where it becomes necessary, or it is desired, by the governing authority of any gravity drainage district,
 
 *1025
 
 or subdrainage district, to exercise the authority granted by Section 1 of this Act, such governing authority shall first cause to be made, by its supervising engineer, or other competent engineer an estimate of the work already done on the system of drainage which has been accomplished, and if it be found by such estimate that eighty per cent (80%) or more of the system has been completed, such governing authority shall authorize, by proper ordinance, the creation of an additional indebtedness, and shall levy an additional ad valorem or acreage tax or forced contribution and fund same into bonds, for the purpose of perfecting and completing such system of gravity drainage, or of paying any indebtedness incurred or to be incurred, in completing same, not to exceed, however, twenty per cent (20%) of the total cost of such system of drainage.’ The act does not provide that ‘in any case where it became necessary, or it was desired,’ but provides that where it becomes necessary, or it is desired, etc.”
 

 Supplementing the above reasons, we observe that Section 2 of the Statute provides that where it is desired by the governing authority of any district to exercise the power granted by Section 1 of the Act, it should first cause to be made an estimate of the work already done on the drainage system and if it should be found by such estimate that 80% or more of the system has been completed, then, the governing authority could, by proper ordinance, etc., authorize the extra additional work to be done and provide for the payment thereof. Of course, this language is also obviously prospective and not retrospective.
 

 It is a sound rule of construction never to consider laws applicable to cases which have arisen previous to their passage, unless the Legislature, in express terms, declared such to be their intention, or used words which give unavoidable implication to such intention. Article 8, Civil Code; Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 97 A.L.R. 1184, and Sample v. Whitaker, 174 La. 245, 140 So. 36.
 

 Furthermore, in the case of Ascension Red Cypress Co. v. River Drainage District, 175 La. 300, 143 So. 270, this Court held that only the law in force at the time that a tax was levied by a drainage district was pertinent to the issues involving such tax. See also State ex rel. Ascension Red Cypress Co. v. River Drainage District, 148 La. 603, 87 So. 310.
 

 The case of Middleton v. Tangipahoa Drainage District, 169 La. 719, 125 So. 866, 867, is not in point because, as is stated in the opinion, the work was performed during “the latter part of the year 1928,” at which time Act No. 227 of 1928 was in effect.
 

 Finally, it is said that Act No. 227 of 1928 is purely remedial or procedural and should be given retroactive effect. It is obvious that at the time the work was authorized by the engineer in the instant case neither he nor the governing authority had the power and legal right to authorize the work without the approval of the taxpayers in the district, as required by the provisions of Act No. 238 of 1924. The order for the extra or additional work was therefore ultra vires and to construe the Statute as the relator contends it should be interpreted would be giving retroactive effect to an Act
 
 *1027
 
 which would grant a substantive right, as distinguished from a remedial right under the law, by ratifying and confirming a supplemental contract which was ultra vires or unauthorized.
 

 It is our opinion that the judgment of the trial court is correct and it is, therefore, affirmed at the relator’s costs.
 

 LAND, J., absent.