HAMITER, J., dissents and assigns written reasons.

HAMITER, Justice (dissenting).

The factual situation and principal issues presented by this litigation are substantially the same as those contained in Hunter Company v. Shell Oil Company, Inc., 211 La. 893, 31 So.2d 10. In that case I re-

corded a conclusion different from the holding of the majority, assigning written reasons therefor. To such conclusion and reasons I still adhere, and it follows that I must and do respectfully dissent herein.

49 So.2d 858

**SANDERS v. FLOWERS et al.**

**No. 39128.**

March 20, 1950.

On Rehearing Nov. 6, 1950.

Rehearing Denied Dec. 11, 1950.

C. F. Currier, J. P. D'Artois, Pyburn & Pyburn, and Tucker, Bronson & Martin, H. M. Holder, all of Shreveport, for defendants-appellants.

Roberts & Hammett, C. J. Bolin and Jackson, Mayer & Kennedy, all of Shreveport, for plaintiff-appellee.

HAMITER, Justice.

In contest here is the ownership of one-half of the mineral rights in and to, as well as the validity of oil and gas leases affect-

ing, a 20-acre tract of land in the Haynesville Oil Field of Claiborne Parish described as the West Half of Southwest Quarter of Northeast Quarter (W½ of SW¼ of NE¼) of Section 21, Township 23 North, Range 8 West.

As owner and possessor of the described land W. R. Sanders instituted this slander of title action on May 17, 1946. He alleged that, without right or authority, the Ohio Oil Company is claiming oil, gas and mineral leases on the tract and that the other impleaded defendants are asserting ownership to one-half of the minerals underlying the property. In the petition plaintiff specially pleaded the prescription of ten years liberandi causa against the rights of the defendant mineral claimants, they being some of the persons who executed the aforementioned leases.

The defendants (two of whom were minors) answered, setting up titles to their respective claims and pleading particularly both suspension and interruption of prescription liberandi causa with respect to the mineral rights.

The case was tried and submitted on a written stipulation of facts to which were annexed certain pertinent documents, including copies of Orders Nos. 35 and 35-5 of the Commissioner of Conservation of Louisiana. After the submission, but before decision, plaintiff's counsel filed (1) a plea of prescription of ten years acquirendi causa and (2) a plea of unconstitutionality of Act No. 157 of 1940 and of the above mentioned orders of the Conservation Commissioner. The statute and orders, attacked under the latter plea, are relied on by defendants for interrupting the running of the liberative prescription.

Ultimately the district court sustained the plea of prescription liberandi causa as to the mineral rights claimed by all of the defendants except the two minors. Accordingly it rendered judgment rejecting plaintiff's demands as against the minors, but ordered cancelled and erased from the Conveyance Records of Claiborne Parish (insofar as the 20-acre tract is concerned) all deeds under which the other defendants were asserting ownership of mineral rights. The judgment further decreed a cancellation of the oil, gas and mineral leases (affecting plaintiff's 20 acres) held by the defendant, Ohio Oil Company.

The defendants, except the minors, appealed suspensively and devolutively. Plaintiff appealed devolutively from that part of the judgment which rejected his demands.

The record, particularly the written stipulation of counsel, discloses the following factual situation. Plaintiff acquired the 20-acre tract of land (W½ of SW¼ of NE¼ of Section 21) from J. N. Bond under a deed dated January 28, 1930, as corrected by an instrument of date February 5, 1930 which recited: "It is specially understood by and between the vendor and vendee herein that all the oil, gas and other minerals, in, on and under and that may be pro-

duced is hereby reserved and excepted from this conveyance together with the rights of ingress and egress for the development thereof. This deed is made to correct that certain deed of date January 28, 1930, by and between the same parties herein wherein the reservation of oil, gas and other minerals was omitted and is made solely for the purpose of placing said reservation in said deed, otherwise the deed to remain as written."

By mesne conveyances J. N. Bond (plaintiff's author in title) had acquired from R. P. Bond.

Since his acquisition in 1930 plaintiff has been in the continuous possession of the land, and he has never executed an oil and gas lease or any other mineral contract affecting the property.

By a deed dated March 31, 1921, R. P. Bond sold unto T. A. Flowers one-half of the mineral rights in and under the SW¼ of NE¼ of Section 21, Township 23 North, Range 8 West, Claiborne Parish (this includes plaintiff's 20 acres). This sale established on the property the mineral servitude (so termed by the jurisprudence of this court and hereafter referred to as the Flowers servitude) which is in contest here. If the servitude is still effective it is owned by the following defendants in the proportions set opposite their respective names:

| | |
|---|---|
| T. A. Flowers | 11/96 |
| J. M. McCarty | 18/96 |
| Mrs. Pauline Allen Barranger | 2/96 |
| Allan C. Jones (a minor born December 18, 1925) | 2/96 |
| Karl J. Jones (a minor born March 29, 1929) | 2/96 |
| E. F. Fincher, Trustee | 9/96 |
| Mrs. Carrie Inabett | 4/96 |

The mentioned minors acquired their interests in the Flowers servitude by inheritance: one-half on November 24, 1937, and the remainder on October 11, 1943.

The written stipulation of counsel further discloses that during the year 1921 the Ohio Oil Company, under a valid lease then held by it, drilled several wells on the SW¼ of NE¼ of Section 21 (including plaintiff's tract) to the Buckrange Sand and produced oil and gas therefrom continuously until December, 1931, when all production ceased. Thereafter, in May, 1934, the named lessee attempted without success to re-establish production from one of those wells by cleaning it out, installing certain equipment therein, and pumping it. No operations for the production of minerals from the W½ of SW¼ of NE¼, Section 21 (plaintiff's 20-acre tract) have since taken place.

Between the years 1937 and 1942 the Ohio Oil Company acquired certain oil, gas and mineral leases on the SW¼ of NE¼ and the NW¼ of NE¼ of Section 21, Township 23 North, Range 8 West, they having been executed by the several persons asserting interests in those tracts except plaintiff, and also except Mrs. Julia Dyer and Elizabeth Dyer who owned jointly a 1/20th mineral

interest in the S½ of NW¼ of NE¼ of Section 21.

On January 17, 1942, operations were commenced by the Ohio Oil Company for the drilling of a well located in the approximate center of the NW¼ of NE¼, Section 21, and on February 12, 1942, such well was completed in the Pettit Zone (a formation deeper than the Buckrange) as a producer of oil and gas. Continuously thereafter the well has produced in paying quantities.

Meanwhile, on February 6, 1942, the Commissioner of Conservation of the State of Louisiana, pursuant to the provisions of Act No. 157 of 1940 and following a hearing held before him on February 4, 1942, issued order No. 35 which announced special rules and regulations governing the exploration for and the production of oil and gas from the Pettit Zone of the Haynesville Oil Field in Claiborne Parish, including the unitization of all separate property interests within prescribed areas. This order, among other things, also established drilling units of 80 acres, each composed of two adjacent 40-acre parcels running north and south and on which not more than one well could be drilled. Specifically the order stipulated that the W½ of the NE¼ of Section 21 should constitute a production unit in accordance with the spacing pattern and that the well then being drilled in the NW¼ of the NE¼ of such section should serve that unit.

On March 17, 1942, the Commissioner of Conservation, following a hearing held on

that date, issued order No. 35-5 by which all separate tracts and all separately owned property interests embraced in W½ of NE¼ of Section 21 were pooled and unitized for the production of oil and gas from the Pettit Zone in said unit. The order further provided that such 80-acre tract, for all purposes of the leasehold contracts affecting it, shall be treated, developed and operated as one lease and one unit.

Plaintiff, W. R. Sanders, was not personally notified of any of the hearings from and upon which the said orders were issued, nor did he have any personal notice that the orders had been issued.

With this factual situation in mind we now consider the two matters presented by the appeals, they being plaintiff's pleas respecting the disputed one-half mineral rights of (1) the prescription of ten years acquirendi causa and (2) the prescription of ten years liberandi causa.

The first mentioned plea — that of the acquisitive prescription — was not discussed in the trial judge's written reasons for judgment or mentioned in his formal decree. Apparently it was impliedly overruled, however, for plaintiff's demands as against the minors Karl J. Jones and Allan C. Jones were rejected; and since he has appealed from that part of the judgment so rejecting his demands the plea is properly before us.

To acquire ownership by the acquisitive prescription of ten years it is essential that certain conditions concur, principally among

which are possession during the announced period, good faith on the part of the possessor, and. a title legal and sufficient to transfer the property. Civil Code, Article 3479. Assuming, but not holding, that this plaintiff had possession of the disputed minerals by reason of his ownership and occupancy of the land, it is certain that the other two essentials are not present. He is claiming under the deed from J. N. Bond of date January 28, 1930, as corrected eight days later (February 5, 1930) by an instrument (signed by him) excepting from the conveyance all of the oil, gas and other minerals in and under the land. This corrective instrument expressed and evidenced the original intention of the parties and was retroactively effective as of the date of the original deed. Union Sulphur Company, Inc. v. Lognion, 212 La. 632, 33 So.2d 178. In view of the provisions of his deed (as corrected) it cannot be correctly said that plaintiff possessed the minerals in good faith, actually and sincerely believing himself to be the owner thereof, or that he had a title then sufficient to transfer them. The acquisitive prescription plea, consequently, is without merit.

The cited case of Sample v. Whitaker, 174 La. 245, 140 So. 36, does not support plaintiff's position. The deed therein excepted no minerals from the conveyance; rather, as pointed out in the opinion, it purported to convey the full ownership of the land and all of its appurtenances.

The liberative prescription of ten years for non-user, which is also pleaded, commenced running against the Flowers mineral servitude after plaintiff acquired the land. The commencement is fixed by him as of December, 1931, when production from the Buckrange Sand wells (located on the 20 acres) ceased; whereas defendants assert that it began in 1934 when the Ohio Oil Company cleaned one of those wells and sought to reestablish production therefrom. All agree, however, that a suspension of the prescription occurred in 1937 when the minors, Karl J. Jones and Allan C. Jones, inherited interests in the servitude. Furthermore, it appears to be conceded by all counsel that as to those minors the prescription was still suspended at the time of institution of this suit; but as to the major co-owners, they having failed to exercise their rights pursuant to the provisions of Act No. 232 of 1944, the liberative prescription has accrued unless the above described spacing and unitization orders of the Conservation Commissioner (Nos. 35 and 35-5), together with the drilling of the Pettit Zone well on the established 80-acre unit (plaintiff's 20-acre tract is within the unit but on it the well was not drilled), constituted a user of the mineral servitude and served to interrupt the running of the prescription. Thus, plaintiff's counsel, to quote from their brief, state: "This prescription began to run under the stipulation in December of 1931. Inasmuch as no well has ever been drilled upon the land in controversy it has continued to run against the

majors owning all but 2/96 interest in the disputed servitude, unless the court holds that the drilling and production on the NW¼ of NE¼ of Section 21 constitutes a user of the servitude on the W½ of SW¼ of NE¼ of Section 21."

And defense counsel comment: "It is submitted that under these circumstances, namely: that prior to the running of prescription on the mineral servitude on the tract involved in this case that tract was pooled and unitized in the eighty-acre unit, and that a producing well was drilled pursuant to such forced unitization of the Commissioner of Conservation, all prior to the expiration of the running of the ten years liberative prescription, that that well and the production from it constitutes a continuous interruption of the running of prescription against the servitude."

In contending that the running of prescription was not so interrupted, plaintiff takes the position that since he was not personally notified of any hearings (the stipulation discloses this fact) upon which the Commissioner's orders were issued such orders were ineffectual, null and void as to him and his land. He, in other words, attacks the proceedings of the Commissioner as divesting him of valuable property rights without due process of law.

Resisting, defense counsel urge that notice by publication, which the orders declare was given, fulfilled the requirements of Act No. 157 of 1940 and was sufficient to render the proceedings valid as to all interested persons.

The trial judge found merit in the position of plaintiff and held that, as to him, the proceedings and orders of the Commissioner were nullities and not binding. In part the judge commented: "Therefore, it is my opinion that W. R. Sanders, not having any notice or knowledge of the proceedings and actions taken relative to his land relative to pooling the same with other lands and not having consented thereto, is not bound thereby, and his rights are the same as if such proceedings had not taken place or such orders issued."

It appears to us that before judicially determining the question of the validity of the mentioned proceedings and orders of the Commissioner of Conservation—the question of paramount importance in deciding this dispute—that constitutional officer should be heard in defense of his actions. Here no such defense is offered for the simple reason that he is not a party to this cause.

That the Commissioner will be vitally affected by a decision of the principal issue here there can be no doubt. For example, under the orders attacked only one well may be drilled on the 80-acre unit of which plaintiff's tract is a part. If they be vitiated as to this plaintiff he could very well commence the drilling of a well on his 20-acre tract (a second well in the unit) contrary to the spacing requirements determined and fixed by the Commissioner

pursuant to the authority and direction provided by Act No. 157 of 1940. The orders also might be ineffectual as to numerous other landowners, situated similarly to plaintiff, for they relate to a great portion of the Haynesville Oil Field in Claiborne Parish. And being thus affected the Commissioner is a necessary party to this litigation. "It is elementary that every party who may be affected by a decree must be made a party to a suit, because no one should be condemned without a hearing." Commercial National Bank in Shreveport v. Haas, 182 La. 502, 162 So. 57, 58; State ex rel. Woods v. Register of State Land Office, 189 La. 69, 179 So. 38.

It is to be noticed, incidentally, that Act No. 157 of 1940 contemplates proceedings conducted contradictorily with the Commissioner of Conservation when his regulations or orders are assailed. Section 11 of the Statute makes provision for an injunction suit against that official under such circumstances and specifically sets forth the procedure to be followed. It recites in part: "Any interested person adversely affected by any statute of this State with respect to conservation of oil or gas, or both, or by any provision of this Act, or by any rule, regulation or order made by the Commissioner hereunder, or by any act done or threatened thereunder, and who has exhausted his administrative remedy, may obtain court review and seek relief by a suit for an injunction against the Commissioner as defendant, * * *."

It is true that the defendants did not file an exception of non-joinder, and they have not urged here that the Commissioner should be called upon to defend his orders. The court of its own motion, however, may take cognizance of the lack of a necessary party. Succession of Todd, 165 La. 453, 115 So. 653; De Hart v. Continental Land & Fur Co., Inc., 196 La. 701, 200 So. 9; Bologna Bros. v. Stephens, 206 La. 112, 18 So.2d 914; Douglas v. Haro, 214 La. 1099, 39 So.2d 744. See also Schaub v. O'Quin, 214 La. 424, 38 So.2d 63.

Our conclusion, therefore, is that plaintiff's action, except as to the mentioned two minors, should be dismissed as of non-suit. With a decree of that character he will be permitted to pursue further litigation consistent with the views herein expressed.

For the reasons assigned the judgment of the district court is affirmed insofar as it rejects plaintiff's demands against Karl J. Jones and Allan C. Jones. Otherwise, the judgment is reversed and set aside and plaintiff's action is dismissed as of non-suit at his costs.

On Rehearing

LE BLANC, Justice.

A rehearing was granted in this case restricted however, to a consideration of the plea of ten years prescription liberandi causa. The case is fully stated in the opinion handed down on the original hearing and it is unnecessary for us to restate it in this opinion.

As appears from the original opinion, a plea of prescription of ten years liberandi causa was filed by plaintiff's counsel after submission of the case to the district court and before a decision had been rendered. The plea is opposed by those defendants who are majors on the ground that the prescription claimed was suspended or interrupted by the orders issued by the Commissioner of Conservation of the State of Louisiana on February 6, 1942 and on March 17, 1942 establishing drilling units of 80 acres in the Haynesville Oil Field in Claiborne Parish. The order of February 6, 1942, Order No. 35, specifically stipulated that the W½ of the NE¼ of Section 21, which includes the property involved in this controversy, should constitute a production unit in accordance with the spacing pattern and that the well then being drilled in the NW¼ of the NE¼ of such Section should serve that unit. On March 17, 1942, the Commissioner issued Order No. 35-5, by which all separate tracts and all separately owned property interests embraced in the W½ of the NE¼ of Section 21 were pooled and unitized for the production of oil and gas from the Pettit Zone in said unit. That order further provided that such 80 acre tract, for all purposes of the lease-hold contracts affecting it, were to be treated, developed and operated as one lease and one unit.

The plaintiff, W. R. Sanders, was not personally served with a notice of either of the hearings called for the purpose of considering and acting upon the orders that were subsequently issued nor was he personally notified that such orders had been issued and in consequence thereof he contends that he was not affected by either and further that they are both invalid and illegal. This, he further contends, had no effect on the running of the prescription which he pleads and under which he maintains that he owns one-half of the mineral rights in the property.

On the original hearing, although the point had not been urged, we came to the conclusion that the Commissioner of Conservation whose orders were being challenged was a necessary party to this litigation and, on our own motion, dismissed plaintiff's suit as against all of the defendants, except the two minors who had an interest in the property, as in case of nonsuit and, as is further observed, it was stated in the opinion that a decree of that character would permit the plaintiff to pursue further litigation, if he so desired, against the remaining defendants and the Commissioner of Conservation of the State of Louisiana.

Our further consideration of that point in the case has led us to a different conclusion and as we are now of the opinion that the Commissioner of Conservation is not a necessary party defendant to the litigation, it will become necessary for us to pass also on the further question that is presented with respect to the validity of his orders and whether or not the plaintiff was affected by them.

 It now also occurs to us that plaintiff was without right or interest to question the orders of the Commissioner because at the time they were issued in February and March of 1942, he had no more than a reversionary interest in the mineral rights he now claims.

As is pointed out in the statement of facts in the original opinion, plaintiff acquired the property on January 28, 1930. That deed contained no reservation of the minerals, but on February 5, 1930 it was corrected by an instrument which recited a specific stipulation to the effect that all oil, gas, and other minerals, in, on and under, and that may be produced from the land were reserved and excepted, with the rights of ingress and egress for the development thereof. As also pointed out, it is the one-half interest of such oil, gas and other minerals which were sold by plaintiff's grantor, R. P. Bond to T. A. Flowers on March 31, 1921 that is the subject of this contest. In the course of various transactions involving that same mineral interest, two minor children obtained an interest in the servitude by inheritance, one-half thereof on November 14, 1937 and the remainder on October 11, 1943. One of these minors became of age December 18, 1946 and the other on March 29, 1950.

During the year 1921 the Ohio Oil Company, under a valid lease then held by it, drilled several wells on the S½ of the NE¼ of Section 21, including plaintiff's tract of land, to what is known as the Buck-

range Sand and produced oil and gas therefrom continuously until December 1931, at which time, all production ceased.

Between the years of 1937 and 1942 the Ohio Oil Company again acquired certain oil, gas and mineral leases on Section 21 from all of the mineral right holders with the exception of plaintiff and two others, and on January 17, 1942, commenced operations for the drilling of a well located in the approximate center of the NW¼ of the NE¼ of Section 21 and succeeded, on February 12, 1942 in completing a producing well in what is known as the Pettit Zone, a formation that is deeper than the Buckrange Sand. The present suit was instituted by plaintiff on May 17, 1946.

 Production which had commenced in 1921 in the wells then drilled by the Ohio Oil Company, having ceased by December 1931, prescription would therefore have run by December 1941, unless there had been some form of suspension or interruption. The appearance of the two minors' interest in 1937 had the effect of constituting a suspension, not only as to them, but at that time, as the law then stood, as to all their major co-owners as well. In 1944 however, the Legislature, by Act No. 232 of that year changed the law as it had been interpreted in the jurisprudence of this State, and discontinued the favor which had been accorded to major co-owners by reason of their co-ownership with minors, giving them however, one year from the effective date of the Act within which to

preserve their interest by making use of the servitude they enjoyed.[1] In the meantime, however, the Commissioner of Conservation had issued the two orders of February and March 1942. Therefore, the Act of 1944 could have had no effect on the status of the servitude in 1937 when the minors' interest entered into the picture and suspended the prescription in favor of all major co-owners and plaintiff himself had absolutely no interest in the minerals at that time other than a reversionary one and as the orders of the Commissioner were issued in 1942, two years before the passage of Act No. 232 of 1944, the minority interest in the property still suspended prescription in favor of the major co-owners; he was without any right to question those orders and need not, therefore, have been notified of the hearing of the Commissioner before which they were to be considered.

For the sake of considering those issues on which the rehearing was granted, we will assume, however, that because of his reversionary interest in the minerals, plaintiff was vested with some right to be notified of the hearing before the Commissioner and will now proceed to discuss those issues.

The first we will take up is the one on which the opinion on the original hearing was based and which resulted in nonsuiting the plaintiff on the ground that the Commissioner of Conservation was a necessary party to this litigation.

■ The test as to whether one should be made a party defendant in a given case relates to the interest which he may have in the outcome of the suit and how he would be affected by the judgment to be rendered. For instance, a levee district to which certain lands had been forfeited for the non-payment of taxes, and its transferee of those lands, were held to be necessary parties defendant in a mandamus proceeding brought by a former owner to compel the Register of the State Land Office to issue a certificate of redemption on the ground that the Acts of the Legislature under which the transfer had been made were unconstitutional. State ex rel. Woods v. Register of State Land Office, 189 La. 69, 179 So. 38. On the other hand, it has been held that the tax collector is not a necessary party to an action between two individuals to annul a tax sale on the ground that it was made in violation of a State statute, because the tax collector would have no personal interest in a judgment involving the title to the property. Wederstrandt v. Freyhan, 34 La.Ann. 705.

---

1. Act No. 232 of 1944 is now incorporated in Louisiana Revised Statutes of 1950, under Sec. 5805 of Title 9. That section was amended by Act No. 510 of 1950 which does away with the suspension of prescription as to minors, giving them, however, one year from the effective date of the Act in which to exercise their rights.

In the present case the Commissioner of Conservation has no interest in what the result of the suit and the judgment of the court will be. Plaintiff is not attacking the orders which he issued nor the substance of those orders and has asked for no relief against him. It is only the method of procedure under which they were granted that is complained of. The judgment to be rendered can only affect the mineral rights of the plaintiff or those of the defendants and the Commissioner will have nothing to give nor will anything be taken away from him regardless of the outcome of the suit. Obviously the Commissioner of Conservation cannot be expected to appear in court and defend all of the orders issued by him whenever such orders are collaterally attacked on the basis on, and the manner in, which the orders are being challenged by this plaintiff.

The only effect sustaining plaintiff's contention that he was not personally notified of the hearings would be to affect the validity of the orders as to him, in which event it is intimated in the opinion on the original hearing that he could commence the drilling of a well on his tract of land, contrary to their provisions. But in order to do so it would be necessary for him to first secure a permit from the Commissioner and in the light of the existing circumstances we do not see how the permission could very well be granted. Insofar as the orders being effectual as to other land owners in the unit, that is a matter which would rest between those land owners themselves and the Commissioner and with which the plaintiff is not concerned in any manner.

The holding on the original hearing on this point will therefore have to be reversed and we now hold that the Commissioner of Conservation is not a necessary party to this litigation.

Having thus concluded on this point, we now proceed to a consideration of the remaining issue in the case and that is whether or not the plaintiff was entitled to a personal notice of the hearings, as he contends, in order to be bound by the orders which were issued by the Commissioner. The trial judge held that he was and as he did not receive such notice, he was not bound by them and his rights are the same as though they had never been issued. In this we are unable to agree with the trial judge.

The constitutionality of Act No. 157 of 1940 which was enacted in pursuance of Section 1, Article 6 of the Constitution of 1921, was fully discussed and passed on in the case of Hunter Co. v. McHugh, 202 La. 97, 11 So.2d 495. The article of the Constitution created the State Department of Conservation and established the office of Commissioner of Conservation. It ordained the Legislature to enact the necessary laws to carry out the purpose of protecting, conserving and replenishing the natural resources of the State. The Act

of 1940 prescribed the duties of the Commissioner and granted him broad powers in administering his office. These powers were recognized and upheld in the Hunter case just cited. Among them we find that specifically the Act provides in Section 5 that he "shall prescribe the rules of order or procedure in hearings or other proceedings before him * * *." The only restriction that is placed on him is, that in the absence of an emergency, he shall not make any rule, regulation or issue any order, etc. "except after a public hearing upon at least ten days' notice given in the manner and form * * * prescribed by" him. In promulgating the rule regarding the giving of such notice, the Department of Conservation, on March 25, 1948, provided that the notice so required under the Act is to be published in the official journal of the State of Louisiana and in addition thereto copies of such notice are to be mailed to the interested parties of whom the Department is cognizant. See Tulane Law Review, Vol. 24, page 157, "Conservation Laws and their Administration" by S. L. Digby and staff.

Order No. 35, which is under attack by the plaintiff in this case, itself recites that "pursuant to power delegated by Act No. 157 of the Louisiana Legislature for 1940, following publication of notice of hearing not less than ten days prior to said hearing in the Baton Rouge State Times, the official State journal and a newspaper of general circulation published in East Baton Rouge Parish and in the Haynesville News, a newspaper of general circulation published in Claiborne Parish, the Commissioner of Conservation held a hearing at New Orleans, La., on Wednesday, February 4, 1942 * * *." The subsequent order, Order No. 35-5 contains the recital that pursuant to the provisions of the Act No. 157 of 1940, and in accordance with the provisions of Section 2 of Order No. 35 theretofore issued by the Commissioner, "and following publication of notice of hearing according to law, the Commissioner of Conservation held a hearing at New Orleans, Louisiana, on Tuesday, March 17, 1942, * * *." There was, therefore, a complete compliance with the provisions of the rules prescribed by the Department with regard to giving notice by publication. It is true, that the rule further provides that copies of the notice are to be mailed to interested parties but it is to be observed that that provision relates only to such parties "of whom the Department is cognizant." As far as the record in this case reveals, there is nothing to indicate that copies of the notice were not mailed to all interested parties the Department knew of. If the plaintiff did not receive a copy by mail it may be for the very fact that the Department did not consider him, as indeed we do not, an interested party.

Pursuing the provisions of the Act a bit further we find in paragraph D. of Section 5, a provision to the effect that

there may be a notice given by personal service but undoubtedly from the language of that paragraph the giving of such notice is a matter which rests solely and entirely with the Commissioner himself for it reads as follows: "Should the Commissioner *elect* to give notice by personal service, * * *." (Our italics.) The paragraph then further provides that in case of such election service has to "be made by any officer authorized to serve process or any agent of the Commissioner in the same manner as is provided by law for the service of citation in civil actions in the district courts."

The District Judge stresses the importance on the point of service of the notice by referring to the fact that the Act itself prescribes the manner in which it shall be made and whilst that is true it is also true that such a requirement relates only to service of a personal notice which, as is readily observed from the language of the paragraph we have quoted, is a matter that is left to the election and discretion of the Commissioner, himself. Evidently in this case he did not elect to give notice by personal service and chose rather to follow the form prescribed under the rules of the Department of Conservation to give notice by publication which was all that he was required to do.

For the reasons stated, it is now ordered that the judgment appealed from be reversed, avoided and set aside, and it is further ordered, adjudged and decreed that there be judgment in favor of the defendant, rejecting plaintiff's demand and dismissing his suit at his costs.

HAMITER, Justice (dissenting).

For the reasons which I assigned on the original hearing of this cause, as the author of the opinion then rendered, I am of the firm conviction that plaintiff's action should be dismissed only as of non-suit.

I respectfully dissent.

On Application for Second Rehearing.

PER CURIAM.

Counsel for W. R. Sanders contend on application for a second rehearing that this court has never considered the question of whether the orders of the Commissioner of Conservation could validly have the effect of interrupting or suspending the liberative prescription.

The conclusion we have reached in this case necessarily reflects that we have given consideration to this question, and whether the order of the Commissioner unitizing the area had the effect of suspending the running of prescription by placing an obstacle to drilling on defendants' property, or of interrupting the prescription by the drilling of a producing well within the unit, in which defendants' property is included, is immaterial in this case.

HAMITER, J., does not take part because of his view heretofore expressed.