308 So.2d 776 (1975)
CITY OF BATON ROUGE, Appellant,
v.
Wilbur EWING, Appellee.
No. 55390.
Supreme Court of Louisiana.
February 24, 1975.
Dissenting Opinion March 6, 1975.
*777 George B. Eldredge, Legal Intern, Martin E. Regan, Jr., Legal Intern, P. Raymond Lamonica, Supervising Atty., LSU Clinical Legal Education Program, Baton Rouge, for plaintiff-appellant.
Byron Magbee, Baton Rouge, for defendant-appellee.
TATE, Justice.
The defendant Ewing was charged with using "indecent, vile, and profane language", in violation of a city ordinance. The city court granted the defendant's motion to quash the charge. The motion was based on the ground that the ordinance was unconstitutional as violating the protection of free speech provided by the First Amendment to the federal constitution.
The City appeals.
The ordinance at issue is Baton Rouge City Code, Title 13, Section 150.[1] The ordinance makes unlawful the use of "indecent, vile, profane or blasphemous language on or near" public streets or places.
Under the terms of the ordinance, as the defendant argues, the use of profane language "on or near" a street, etc., is punishable, whether or not addressed to any other person and whether or not tending foreseeably to cause a breach of the peace.
The First Amendment protection of free speech limits statutes punishing the use of language to regulation of "fighting" words"those which by their very utterance inflict injury or tend to incite an *778 immediate breach of the peace"[2] "by the person to whom, individually, the remark is addressed."[3] Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). As stated by Gooding: "Our decisions since Chaplinsky have continued to recognize state power constitutionally to punish `fighting' words under carefully drawn statutes not also susceptible of application to protected expression * * *." 405 U.S. 523, 92 S.Ct. 1106. (Italics ours.)
A statute drawn to punish fighting words may, however, be unconstitutional for overbreadth and vagueness if (as here) included within the compass of the statutory prohibition is expression protected by the First Amendment. As stated by the United States Supreme Court recently, in holding a similar ordinance unconstitutional, Lewis v. City of New Orleans, 415 U.S. 130, 133, 94 S.Ct. 970, 972, 39 L.Ed.2d 214 (1974):
"`It matters not that the words [appellant] used might have been constitutionally prohibited under a narrowly and precisely drawn statute. At least when statutes regulate or proscribe speech and when "no readily apparent construction suggests itself as a vehicle for rehabilitating the statutes in a single prosecution," . . . the transcendent value to all society of constitutionally protected expression is deemed to justify allowing "attacks on overly broad statutes with no requirement that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity".... This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression.'"
Our trial brother did not err in holding the present ordinance to be unconstitutional for these reasons.
Likewise, this court for similar reasons has declared facially unconstitutional sections of La.R.S. 14:103, our disturbing the peace statute, as violating First Amendment rights of free speech and assembly. State v. Brown, 282 So.2d 707 (La.1973); State v. Harrison, 280 So.2d 215 (La.1973); State v. Adams, 263 La. 286, 268 So.2d 228 (1972); State v. Ganch, 263 La. 251, 268 So.2d 214 (1972).
In so doing, we held the statutory provisions to be unconstitutional as sweeping within their broad scope constitutionally protected free speech and free assembly. We pointed out that the opportunity for free political discussion is a basic tenet of our constitutional democracy; so that a statute so vague and indefinite as to permit the punishment of the fair use of this opportunity is repugnant to the guaranty of liberty provided by our state and federal constitutions.
Subject to this stringent test, for the reasons noted, is the facial validity of a statute punishing the use of language and thus affecting conduct involving the sensitive area of free speech protected by the First Amendment. To be contrasted is the test applied to arguably-vague statutes which do not regulate conduct within the penumbra of the First Amendment's protection.
In the latter instance, an attack of vagueness may be dispelled by sufficient statutory definiteness as to give a person of ordinary intelligence fair notice that his conduct is criminal. State v. Heck and Scheel, 307 So.2d 332 (La.1975) (decided January 20, 1975,) ("engaging in a fistic encounter"); City of Baton Rouge v. Norman, 290 So.2d 865 (La. 1974) (criminal trespass). Less sharply significant there is the circumstance that innocent conduct may arguably be within the scope of this latter type of enactment; for, not being constitutionally protected, its inhibition is a legislative matter which the courts are not necessarily required by constitutional command to invalidate.
*779 On behalf of the state, able argument is persuasively directed to this court for it to afford the ordinance such an interpretation as to save its constitutionality. We are reminded that Chaplinsky involved a New Hampshire enactment quite similar to the present. That statute punished addressing offensive language "to any other person who is lawfully in any street or any public place." 315 U.S. 569, 62 S.Ct. 768. (Italics ours.) The nation's high court held the statute valid, since as authoritatively construed by the New Hampshire Supreme Court it punished only fighting words.
Here, however, such authoritative construction was not, as in Chaplinsky, made prior to the conduct now made the subject of a criminal charge.
Further, the New Hampshire statute permitted such a construction by at least limiting the enactment's application to insults directed to a particular person. On its face, the present enactment punishes the use of language irrespective of whether in the immediate presence of another person: Two motorists passing one another in congested urban traffic are within the apparent scope of the statutory prohibition, whether their muttered curses are directed at the congestion, at one another, or at a passenger in their respective vehicles.
To cure such overbreadth would not so much be a matter of reasonable judicial construction as of substantial legislative revision. As we stated in State v. Harrison, 280 So.2d 215 (1973), where we likewise refused to perform judicial surgery and judicial transplant to save an overbroad disturbing-the-peace statute, "* * * the restructuring of the statute addresses itself to the Legislature" (here, the legislative organ of the city-appellant).
For these reasons, we affirm the city court's holding that the ordinance's constitutional informity and its action in quashing the instant information for such reason.
Affirmed.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
The Baton Rouge City Ordinance found unconstitutional by the Court declares that "It shall be unlawful for any person or persons to use indecent, vile, profane or blasphemous language on or near the streets, alleys, sidewalks, or other places of public resort." BRCC 13:150.
In my view this statute can be reasonably construed to mean that it is unlawful for a person to use indecent, vile or profane language on or near a public place to or concerning another person, in his presence, with intent to provoke violent resentment. What other use is there for vile, profane or blasphemous language?
It is furthermore my view that the Court is under a duty to so construe the ordinance to conform with recognized constitutional standards. Arley v. United Pacific Insurance Co., 379 F.2d 183, (9th Cir. 1967); Sample et al v. Whitaker et al, 174 La. 245, 140 So. 36 (1932). Even when the ordinance is facially unconstitutional due to its over-breadth its application should be narrowly construed so as to save it from constitutional attack. Gordon v. Schiro, 310 F.Supp. 884 (E.D.La.1970).
All speech is not protected under the First and Fourteenth Amendments of the United States Constitution.
"... it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or `fighting' wordsthose which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of *780 any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. `Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution and its punishment as a criminal act would raise no question under that instrument.'" Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). (emphasis added).
Control of First Amendment rights where their exercise interferes with travel on the streets is an example of governmental responsibility to insure order. Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); State v. Brown, 282 So.2d 707 (La.1973) (Summers, J. dissenting). In keeping with this responsibility the government may regulate free speech if to do so furthers an important or substantial governmental interest when the interest is unrelated to the suppression of free expression and the interest served is as great or greater than the First Amendment right curtailed. Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). A statute meets these requisites when it reasonably restricts the manner and places of speech, expression and conduct; and when discretion for its enforcement is not lodged solely in the judgment of administrative officials.
The ordinance in question satisfies these tests: Speech is restricted only to "streets, alleys, sidewalks, or other places of public resort." The speech limited by the ordinance is only that which has certain characteristics: It must be "indecent, vile, profane or blasphemous." These restrictions are designed to preserve the minimum standards of an orderly society and have no relation to suppression of free expression. The limitations of the ordinance is a reasonable exercise of governmental power invoked to protect the rights of many to the use of public places in a peaceful manner undisturbed by uncouth, obnoxious or indecent words.
"Civilized people refrain from taking the law into their own hands because of a belief that the government as their agent will take care of the problem in an organized, orderly way with as nearly a uniform response as human skills can manage ... When we undermine the general belief that the law will give protection against fighting words and profane and abusive language such as the utterances involved in these cases, we take steps to return to the law of the jungle." Rosenfeld v. New Jersey, 408 U.S. 901, 92 S.Ct. 2479, 33 L.Ed.2d 321 (1972) (Mr. Chief Justice Burger, with whom Mr. Justice Blackmun and Mr. Justice Rehnquist join, dissenting).
I would find the contested ordinance constitutional.
NOTES
[1] BRCC 13:150 in full provides:

"It shall be unlawful for any person or persons to use indecent, vile, profane or blasphemous language on or near the streets, alleys, sidewalks, or other places of public resort." A violation is subject to punishment of fine up to $25 or imprisonment not exceeding 10 days, or both. BRCC 13:151.
[2] Chaplinsky at 315 U.S. 572, 62 S.Ct. 769.
[3] Gooding at 405 U.S. 523, 92 S.Ct. 1106.